625 So.2d 1283 (1993)
NORDYNE, INC., Appellant,
v.
FLORIDA MOBILE HOME SUPPLY, INC., Appellee.
Nos. 91-3094, 91-3739 and 92-2362.
District Court of Appeal of Florida, First District.
October 20, 1993.
*1284 Barry Richard of Greenberg, Traurig, Hoffman, Rosen, Lipoff & Quentel, P.A.; and Julian Clarkson and Michael L. Rosen of Holland & Knight, Tallahassee, for appellant.
Ben H. Wilkinson, Cathi C. Wilkinson and D. Andrew Byrne of Pennington, Wilkinson, Dunlap, Bateman & Camp, P.A., Tallahassee, and Mark L. Mallios and R. Stuart Huff, Coral Gables, for appellee.
WEBSTER, Judge.
Defendant/appellant (Nordyne) appeals and plaintiff/appellee (FMHS) cross appeals, following the entry of a final judgment, after a jury trial, in a relatively complex business tort case. The jury found for FMHS on claims alleging fraud and tortious interference with business relationships, awarding both compensatory and punitive damages. The jury also found for Nordyne on a counterclaim seeking to recover a debt alleged to be outstanding on account of the business relationship which had existed between the parties. However, the trial court subsequently entered a judgment notwithstanding the verdict in favor of FMHS on the counterclaim.
Nordyne argues that the trial court erred by (1) denying Nordyne's motion for directed verdict as to both the fraud and the interference with business relationships claims; (2) admitting testimony of various witnesses; (3) allowing on the issue of damages evidence of *1285 profits which would supposedly be lost by FMHS as a result of Nordyne's actions, during the five years following those actions; (4) entering a judgment notwithstanding the verdict in favor of FMHS on Nordyne's counterclaim; and (5) imposing for discovery violations uncovered post-trial sanctions against Nordyne in the form of a new trial on the amount of punitive damages to which FMHS is entitled, attorney fees and a money judgment in the nature of a fine. On its cross appeal, FMHS argues that the trial court erred when it failed to award attorney fees and costs based upon Nordyne's unreasonable rejection of demands for judgment made by FMHS. We affirm in part, and reverse in part.

I.

DENIAL OF NORDYNE'S MOTION FOR DIRECTED VERDICT
We conclude that Nordyne has failed to preserve for review the propriety of the trial court's denial of its motion for directed verdict questioning the sufficiency of the evidence to support either the fraud or the interference with business relationships claim. Nordyne concedes that the record fails to reflect that it renewed that motion at the close of the evidence. As a general rule, one who fails to renew a motion for directed verdict at the close of the evidence waives the right to challenge on appeal the propriety of the trial court's denial of such a motion made prior to the close of the evidence. See, e.g., Prime Motor Inns, Inc. v. Waltman, 480 So.2d 88 (Fla. 1985); 6551 Collins Ave. Corp. v. Millen, 104 So.2d 337 (Fla. 1958); Aldana v. Winn-Dixie Stores, Inc., 517 So.2d 729 (Fla. 3d DCA 1987).
Nordyne argues that the right to challenge on appeal the sufficiency of the evidence presented at trial may be preserved either by a motion for directed verdict made at the close of the evidence, or by a motion for new trial. Therefore, because it moved for a new trial in the trial court, its right to challenge the sufficiency of the evidence has been adequately preserved. We disagree. In the first place, Nordyne has not raised as error the trial court's denial of its motion for new trial. It challenges only the denial of its motion for directed verdict. Moreover, Nordyne did not assert in its motion for new trial that the jury's verdict was contrary to the manifest weight of the evidence. Therefore, it has, likewise, failed to preserve that issue for review. See, e.g., Ruth v. Sorensen, 104 So.2d 10 (Fla. 1958); Southern American Fire Ins. Co. v. Rinzler, 324 So.2d 133 (Fla. 1st DCA 1975); Winnemore v. Morton, 214 So.2d 509 (Fla. 4th DCA 1968); Mr. Land, Inc. v. Rabinowitz, 134 So.2d 859 (Fla. 3d DCA 1961).
Had Nordyne preserved its right to challenge on appeal the sufficiency of the evidence to support the claims for fraud and interference with business relationships, the outcome on this issue would be unaffected. Our review of the record satisfies us that the evidence presented on the claims was sufficient to justify their submission to the jury, and the jury's verdict.
We do not agree with Nordyne's contention that the fraud claim was based either exclusively or principally upon allegations of nondisclosure or concealment. On the contrary, the allegations regarding that claim relied principally upon intentional misrepresentations. In our view, the evidence was sufficient to support findings that (1) Nordyne made false statements to FMHS regarding a material fact  its intent to continue to permit FMHS to distribute its product; (2) Nordyne knew when it made the statements that they were false; (3) Nordyne intended that FMHS rely upon the false statements; and (4) FMHS did rely upon the false statements, to its detriment. Such evidence is sufficient to establish a claim for fraudulent representations. See, e.g., Lance v. Wade, 457 So.2d 1008 (Fla. 1984).
As to the claim for tortious interference with business relationships, we believe that the evidence was sufficient to support findings that (1) business relationships existed between FMHS and its customers; (2) Nordyne was aware of those relationships; (3) Nordyne intentionally interfered with those relationships solely out of malice and, therefore, without justification; and (4) FMHS sustained damage as a result of Nordyne's interference with those relationships. Such *1286 evidence is sufficient to establish a claim for tortious interference with a business relationship. See, e.g., Florida Fern Growers Ass'n v. Concerned Citizens of Putnam County, 616 So.2d 562 (Fla. 5th DCA 1993); O.E. Smith's Sons, Inc. v. George, 545 So.2d 298 (Fla. 1st DCA 1989).

II.

ADMISSION OF TESTIMONY
Nordyne claims error in the trial court's admission of the testimony of four witnesses  Messrs. Parks, Owens, Burlingame and Dalton. We find it unnecessary to discuss this issue at length. The testimony of Parks and Owens was admitted for the limited purpose of establishing intent, motive or plan, and the jury was instructed accordingly. Evidence of the type offered through Parks and Owens is admissible when relevant to prove intent, motive or plan. Fla. Evid.Code § 90.404(2)(a). Our review of the record leads us to conclude that Nordyne failed to preserve its objection to the testimony of Burlingame and Dalton, because it failed either to object contemporaneously or to renew its previously filed motion in limine addressed to those two individuals. Fredericson v. Levinson, 495 So.2d 842 (Fla. 3d DCA 1986). Our review of the record leads us to conclude, further, that the trial court did not abuse its discretion by ruling as it did regarding the testimony of those four witnesses. See Dale v. Ford Motor Co., 409 So.2d 232 (Fla. 1st DCA 1982) (absent abuse of discretion, ruling regarding admissibility will not be disturbed).

III.

PERMITTING EVIDENCE OF LOST FUTURE PROFITS
Nordyne next argues that the trial court erred when it permitted an expert witness retained by FMHS to testify regarding profits which would be lost by FMHS as a result of Nordyne's actions, during the five years following those actions. According to Nordyne, lost future profits may be recovered only under what is known as the "benefit-of-the-bargain rule," and that rule applies only to breach of contract actions. In fraud and tortious interference cases, Nordyne argues, the appropriate measure of damages is set out in what is known as the "out-of-pocket rule." We disagree.
It is important to note that Nordyne does not contend either that the amount of lost future profits was not established with sufficient certainty, or that the evidence was insufficient to establish that such profits would be lost as a proximate result of its wrongful acts. Rather, it argues only that, as a matter of law, lost future profits are not a recoverable item of damages for claims based upon fraud or tortious interference.
In tort actions, the goal is to restore the injured party to the position it would have been in had the wrong not been committed. Glades Oil Co. v. R.A.I. Management, Inc., 510 So.2d 1193 (Fla. 4th DCA 1987). In most cases, the measure of damages which will accomplish this goal is that provided by the "out-of-pocket rule." However, in some cases, the measure of damages afforded by that rule will prove inadequate to achieve the desired goal. To address those latter cases in which the claim is for fraud, what has been described as the "flexibility theory" has been developed. The "flexibility theory" permits the court to use either the "out-of-pocket" or the "benefit-of-the-bargain" rule, depending upon which is more likely fully to compensate the injured party. E.g., Gregg v. U.S. Industries, Inc., 887 F.2d 1462 (11th Cir.1989) (applying Florida law); DuPuis v. 79th Street Hotel, Inc., 231 So.2d 532 (Fla. 3d DCA), cert. denied, 238 So.2d 105 (Fla. 1970). Thus, in Martin v. Brown, 566 So.2d 890, 891 (Fla. 4th DCA 1990), relying upon DuPuis and Strickland v. Muir, 198 So.2d 49 (Fla. 4th DCA 1967), the court said: "Florida has adopted two standards for the measurement of damages in an action for fraudulent representation. Either may be used to do justice as the circumstances demand. The first standard is the `benefit of the bargain' rule... . The second standard is the `out-of-pocket' rule... ." Accord Martha A. Gottfried, Inc. v. Amster, 511 So.2d 595 (Fla. 4th DCA 1987); Getelman v. Levey, 481 So.2d 1236 (Fla. 3d DCA 1985), review denied, 494 So.2d 1150 (Fla. 1986); Schryburt v. Olesen, 475 So.2d 715 (Fla. 2d *1287 DCA 1985); Hilsenroth v. Kessler, 446 So.2d 147 (Fla. 3d DCA 1984). This view is consistent with the Restatement approach. Restatement (Second) of Torts § 549 (1977).
We recognize that a certain degree of uncertainty exists in this state regarding the availability of the "benefit-of-the-bargain rule" in appropriate fraud cases. This uncertainty is the result of a few decisions which, upon an initial reading, appear to stand for the proposition that such a measure of damages is never appropriate in a fraud case. E.g., Sprayberry v. Sheffield Auto and Truck Service, Inc., 422 So.2d 1073 (Fla. 1st DCA 1982), review dismissed, 427 So.2d 738 (Fla. 1983); Greater Coral Springs Realty, Inc. v. Century 21 Real Estate of Southern Florida, Inc., 412 So.2d 940 (Fla. 3d DCA 1982); Ashland Oil, Inc. v. Pickard, 269 So.2d 714 (Fla. 3d DCA 1972), cert. denied, 285 So.2d 18 (Fla. 1973). However, we believe that upon a closer reading, it becomes apparent that the intent of such decisions was to limit the holding to the specific facts of each case. To the extent that they may be read as suggesting a broader application, we consider such language to be dicta, and disregard it.
In this case, the evidence may fairly be read as establishing that, but for Nordyne's fraudulent representations, FMHS would have continued, for at least the next five years, to enjoy annual profits, as it had for many years. Given the facts of this case, it seems to us that a convincing argument can be made that evidence of profits that FMHS would have realized in the ensuing five years but for Nordyne's fraudulent representations was relevant under the "out-of-pocket rule," because it tended to prove the position that FMHS would have been in but for Nordyne's wrongful acts. To the extent that the evidence may be characterized as relevant only to the "benefit-of-the-bargain rule," we do not believe that the trial court abused its discretion by admitting it, on the theory that evidence of such damages was necessary to achieve justice.
The evidence of lost future profits was properly admitted as relevant to the fraud claim. Because Nordyne did not request a limiting instruction as to the use of such evidence by the jury, it is unnecessary for us to determine whether that evidence was relevant to the tortious interference claim, as well.

IV.

GRANTING A JNOV ON THE COUNTERCLAIM
The jury awarded Nordyne $140,000.00 on its counterclaim. However, the trial court subsequently entered a judgment notwithstanding the verdict in favor of FMHS. The trial court based its ruling upon its conclusions that Nordyne's comptroller was neither the custodian of the business records used to prove the amount owed by FMHS, nor otherwise qualified to authenticate the records; and that, in addition, the records and the comptroller's testimony "were so unreliable to [sic] provide no evidence or inference to support the [c]ounterclaim." Accordingly, the trial court concluded, further, that the records and testimony should not have been admitted in evidence; and that, without them, there was no evidence to support the jury's verdict. Nordyne argues that this ruling was error, and that the jury's verdict should be reinstated. We agree.
Section 90.803(6)(a) of the Florida Evidence Code (the business records exception to the hearsay rule) reads:
The provision of s. 90.802 [the hearsay rule] to the contrary notwithstanding, the following [is] not inadmissible as evidence, even though the declarant is available as a witness:
... .
(6) Records of Regularly Conducted Business Activity.
(a) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or *1288 other qualified witness, unless the sources of information or other circumstances show lack of trustworthiness. The term "business" as used in this paragraph includes a business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
"Th[is] exception makes it possible to introduce relevant evidence without the inconvenience of producing all persons who had a part in preparing the documents during the trial." Charles W. Ehrhardt, Florida Evidence § 803.6, at 613 (1993 ed.).
Nordyne's comptroller testified that, as comptroller, he was responsible for all accounting procedures and financial controls; and that he was the custodian of the books and records of the corporation. He testified that he was familiar with the business records in question, and with the procedures involved in their preparation. He testified that all of the records had been created at or about the time of the events they addressed, by persons who had knowledge of the matters recorded. Finally, he testified that all of the records were kept in the ordinary course of Nordyne's business, and that it was Nordyne's regular practice to prepare such records. Based upon our review of the comptroller's testimony and the business records in question, we conclude that the trial court applied an incorrect and overly exacting standard to determine whether the requirements of the business records exception had been satisfied, and whether the testimony and records were reliable. Accordingly, we conclude, further, that the trial court abused its discretion when it decided, post-trial, to exclude the business records. See Garcia v. State, 564 So.2d 124 (Fla. 1990); Holley v. State, 328 So.2d 224 (Fla. 2d DCA 1976).
We would be constrained to reverse the judgment notwithstanding the verdict entered in favor of FMHS on the counterclaim regardless of our conclusion as to the propriety of the ruling as to the business records. During the trial, deposition testimony of Charles Coleman, who had been Nordyne's credit director for thirty years, was read to the jury without objection. From that testimony, the jury would have been justified in reaching the conclusion that FMHS owed Nordyne as much as $155,248.52. We believe that such evidence was sufficient, by itself, to support the jury's verdict on the counterclaim.

V.

THE IMPOSITION OF SANCTIONS
After the trial, FMHS filed a motion requesting that the trial court either impose sanctions against Nordyne or award attorney fees because, according to FMHS, Nordyne had deliberately failed to produce documents which would have strengthened significantly FMHS's position regarding its demand for punitive damages. The trial court held several hearings on the motion, receiving evidence and listening to argument. Ultimately, the trial court entered three orders  the first granted FMHS a new trial on the amount of punitive damages; the second awarded FMHS $145,000.00 in attorney fees; and the third awarded an additional $150,000.00 to FMHS, in the form of a money judgment against Nordyne. Nordyne challenges all three orders.
All three of the trial court's orders are based upon the finding that Nordyne "intentionally and willfully" withheld documents harmful to its case, which were within the perimeters of requests to produce served by FMHS. In its order granting a new trial on the amount of punitive damages, the trial court also found that "had [the documents] been presented to the jury at trial[,] no reasonable person could disagree that it would have changed the amount of punitive damages awarded. With this evidence available at a new trial[,] it is more probable than not that a greater verdict on punitive damages will be recovered." In its order awarding attorney fees, the trial court also found that "[Nordyne's] failure to produce this key evidence that would have been highly probative of the most important issues in this case made counsel for [FMHS's] burden much more difficult and costly in both pre-trial, trial and post-trial proceedings." In its order imposing a money judgment of $150,000.00 against Nordyne, in the nature of a fine, the trial court also found that "Nordyne ha[d] consciously, intentionally, callously, and *1289 with total disregard of all consequences, refused to comply with th[e] Court's orders. Such bad faith conduct is contemptuous."
Clearly, all three of the orders were intended by the trial court as sanctions for what it perceived to have been egregious activity on the part of Nordyne. Accordingly, the applicable standard of review is abuse of discretion  if reasonable men could differ as to the propriety of the trial court's actions, we cannot conclude that there has been an abuse of discretion, and must affirm. Mercer v. Raine, 443 So.2d 944 (Fla. 1983).
We have carefully reviewed all of the evidence presented to the trial court regarding this issue. As a result of our review, we conclude that the record contains competent substantial evidence to support the critical findings made by the trial court. Accordingly, we turn to the question of whether the severity of the sanctions imposed is commensurate with the discovery violation. See, e.g., Beauchamp v. Collins, 500 So.2d 294 (Fla. 3d DCA 1986), review denied, 511 So.2d 297 (Fla. 1987); Turner v. Anderson, 376 So.2d 899 (Fla. 2d DCA 1979).
In light of the trial court's findings, we are unable to perceive any abuse of discretion in the order granting a new trial on the amount of punitive damages. However, for the benefit of the trial court on remand, we offer the following. At the commencement of the retrial, after giving an appropriately modified version of Standard Jury Instruction (Civil) 1.1, the trial court should instruct the jury that it has already been established that Nordyne committed acts for which an award of punitive damages is an available remedy, and that the jury is not to concern itself with that issue. The trial court should then read to the jury the following:
Although it has been established that Nordyne committed acts for which an award of punitive damages is an available remedy, whether to award punitive damages to Florida Mobile Home Supply on account of Nordyne's actions is an issue for you to decide, based upon your assessment of the circumstances of this case.
Punitive damages are intended to act as punishment, and as a deterrent to others. They are different from compensatory damages, which are intended fairly and adequately to compensate one for losses incurred. Florida Mobile Home Supply has already received an award of compensatory damages for Nordyne's acts.
If you find that punitive damages should be assessed against Nordyne, in fixing the amount of those damages, you should consider the nature, extent and degree of Nordyne's misconduct and all of the related circumstances, including Nordyne's financial resources.
See Fla.Std.Jury Instr. (Civ.) 6.12; Bankers Multiple Line Ins. Co. v. Farish, 464 So.2d 530 (Fla. 1985). These instructions (except, of course, for Standard Instruction 1.1) should be repeated as a part of the charge to the jury at the conclusion of the case, before the jury retires to deliberate. The parties should be permitted to present at trial all evidence relevant to the factors which must be considered by the jury in arriving at a verdict, as outlined in Farish  i.e., all of the circumstances relevant to the fraud and interference with business relationships claims, the degree of wantonness or culpability and Nordyne's net worth. 464 So.2d at 533.
Likewise, we find no abuse of discretion in the trial court's decision to award attorney fees as a sanction. However, because of insufficient findings and an error in the method used to determine the amount of the fee award, we reverse the award and remand for further proceedings. We find no fault with the trial court's decision to award attorney fees for all time reasonably spent by FMHS's attorneys after the trial, in bringing to light Nordyne's discovery violations; and for all time reasonably spent in preparing for and trying the case, which would have been unnecessary had the discovery been timely produced. However, the trial court's findings regarding the number of hours reasonably devoted to such matters are not sufficiently detailed to allow us intelligently to evaluate them. Moreover, given the facts of this case, the amount awarded should be based upon reasonable hourly rates, without the application of any multiplier.
Although we have found no abuse of discretion in the decisions to grant a new trial *1290 on the amount of punitive damages and to award attorney fees, in our opinion, the money judgment in the amount of $150,000.00, awarded as an additional sanction, was an abuse of discretion. We conclude that this award is duplicative of the other two sanctions, and, when considered in light of the other sanctions, results in the imposition of sanctions which are too severe.

VI.

THE CROSS APPEAL
In its cross appeal, FMHS argues that it is entitled to attorney fees and costs pursuant to sections 44.102, 45.061 and 768.79, Florida Statutes (1991), all of which concern offers or demands of judgment or of settlement. Although we concede that this case presents an excellent example of the chaos created by the legislature's activities in this area, we conclude that the trial court correctly denied FMHS's motions.
None of the demands for judgment served by FMHS on Nordyne referred to section 44.102. They referred to sections 45.061 and 768.79, and to Florida Rule of Civil Procedure 1.442. However, none of the demands complied with either of those statutes or the rule  they were all served less than sixty days before trial, thereby failing to comply with section 45.061 and rule 1.442; and they were all withdrawn before Nordyne was required to respond under either statute or the rule. Nevertheless, FMHS's motion, made after the jury had returned its verdict, argued that FMHS was entitled to attorney fees and costs pursuant to section 44.102.
Section 44.102(5)(b), which was added to a statute dealing with court-ordered mediation effective October 1, 1990 (ch. 90-188, § 2, at 853, Laws of Fla.), reads:
Sections 45.061 and 768.79 notwithstanding, an offer of settlement or an offer or demand for judgment may be made at any time after an impasse has been declared by the mediator, or the mediator has reported that no agreement was reached. An offer is deemed rejected as of commencement of trial.
FMHS argues that, because the case was unsuccessfully mediated on May 20, 1991, the demands for judgment were all made on May 28, 1991, and Nordyne did not accept any of the demands before the start of the trial on June 17, 1991, the demands were deemed rejected on the latter date. According to FMHS, because the judgment ultimately recovered was more than twice the amount of the demands for judgment, it is entitled to recover attorney fees and costs. We disagree.
To the extent that section 44.102(5)(b) purports to amend both section 45.061 and section 768.79, it may best be described as a trap set by the legislature for those not fortunate enough previously to have stumbled across it. In our opinion, because FMHS did not inform Nordyne at the time it served its demands for judgment that it intended to rely upon section 44.102(5)(b), it is precluded from doing so after the fact.
Moreover, we note that, recognizing that sections 45.061 and 768.79 contained conflicting terms, and that both statutes included procedural provisions which intruded upon the powers granted by our constitution to the judicial branch, the supreme court recently adopted the procedural portions of section 768.79 as a court rule. Timmons v. Combs, 608 So.2d 1 (Fla. 1992). We believe that section 44.102(5)(b) likewise intrudes upon the rulemaking power of the judicial branch. Accordingly, in our opinion, the provisions of section 44.102(5)(b) must yield to those of section 768.79, which have been adopted as a court rule.

VII.

CONCLUSION
In summary, we affirm that portion of the final judgment which awards compensatory damages to FMHS; we reverse that portion of the final judgment which decrees that Nordyne take nothing on its counterclaim, and remand with directions that the trial court enter judgment on the counterclaim in favor of Nordyne, consistent with the jury's verdict; we affirm the order granting a new trial on the amount of punitive damages, and remand for further proceedings consistent with this opinion; we reverse the order awarding attorney fees, as a sanction, and *1291 remand for further proceedings consistent with this opinion; we reverse the money judgment in the amount of $150,000.00 entered in favor of FMHS, as an additional sanction; and we affirm the order denying FMHS's motion seeking attorney fees and costs for unreasonable rejection of a demand for judgment.
AFFIRMED IN PART; REVERSED IN PART; and REMANDED, with directions.
ZEHMER, C.J., and ALLEN, J., concur.