**Ersell A. LANEY, individually and as Trustee of the Ersell A. Laney Trust, et al., Plaintiffs,**

v.

**AMERICAN EQUITY INVESTMENT LIFE INS. CO., et al., Defendants.**

**No. 800CV1071T30EAJ.**

United States District Court, M.D. Florida, Tampa Division.

Jan. 31, 2003.

---

John Ray Newcomer, Jr., John Allen Yanchunis, Sr., Kathleen Clark Ford, James, Hoyer, Newcomer, & Smiljanich, P.A., Tampa, FL, for Ersell A. Laney, Alice E. Laney.

Robert Eli Vaughn, Jr., Butler Pappas Weihmuller Katz Craig LLP, Tampa, FL, James · Beckett Thompson, James B. Thompson, Jr., Thompson, Goodis, Thompson, Groseclose & Richardson, P.A., St. Petersburg, FL, Timothy J. Walker, Whitfield & Eddy, Des Moines, IA, for American Equity Investment Life Ins. Co.

Lewis F. Murphy, Barbara Bolton Litten, Steel, Hector & Davis, West Palm Beach, FL, Lewis F. Murphy, Traci H. Rollins, Steel Hector & Davis, LLP, Miami, FL, for Golden American Life Ins. Co.

Louis J. LaCava, Stephens, Lynn, Klein, La Cava, Hoffman, Tampa, FL, Joseph H. Lowe, Gary Khutorsky, Stephens, Lynn, Klein, La Cava, Hoffman, Miami, FL, R. Marshall Rainey, Williams, Schifino, Mangione & Steady, P.A., Tampa, FL, Andrew B. David, Sugar, Friedberg & Felsenthal, Chicago, IL, Stephens Lynn Klein, Law Office of Stephens Lynn Klein, Miami, IL, for First Variable Life Ins. Co.

R. Marshall Rainey, Williams, Schifino, Mangione & Steady, P.A., Tampa, FL, Mi-

chael W. Thrall, Nyemaster, Good, Voigts, West, Hansell, O'Brien, P.C., Des Moines, IA, for USG Annuity and Life Co.

Audrey B. Rauchway, Law Office of Audrey Rauchway, St. Petersburg Beach, FL, Laura Anne Olson, David C. Bearden, Olson & Bearden, P.A., Tampa, FL, for Richard W. Desimone.

Jorge Santeiro, Ogden & Sullivan, P.A., Tampa, FL, Timon V. Sullivan, Ogden & Sullivan, P.A., Tampa, FL, for Sun Life Assur. Co. of Canada.

John R. Bello, Jr., Gibbons, Cohn, Neuman, Bello, Segall & Allen, Tampa, FL, Pamela G. Matthews, Tyler Gates Mercer, Akin, Gump, Strauss, Hauer & Feld, L.L.P., San Antonio, TX, for Hartford Life/Ann.

Richard Allen Gilbert, Patrick Joseph McNamara, De La Parte & Gilbert, P.A., Tampa, FL, Anthony J. Durone, Kathleen M. Nemecheck, Berkowitz, Stanton, Brandt, Williams & Shaw, LLP, Kansas City, MO, for Birchtree Financial Services, Inc.

Charles Franklin Ketchey, Jr., Wesley D. Tibbals, Akerman, Senterfitt & Eidson, P.A., Tampa, FL, R. Michael Underwood, Akerman, Senterfitt & Eidson, P.A., Tallahassee, FL, Reza M. Bidgoli, Aragon Financial Services, Inc., Brea, CA, for Aragon Financial Services, Inc.

## ORDER

MOODY, District Judge.

Before the Court is Defendant Richard W. Desimone's Motion for Summary Judgment and Memorandum of law (Dkt.# 229) and Motion to Strike Affidavit of John L. Lyman and for an Award of Attorneys' Fees (Dkt.# 243). Plaintiffs filed responses in opposition to each motion (Dkts.# 240, 245). In addition, Plaintiff filed a Motion for Entry of a Default Judgment against defendant Aragon Financial Services, Inc. ("*Aragon*") (Dkt.# 215). Aragon failed to file a response even after this Court entered an Order to Show Cause (Dkt.# 216). After close consideration, this Court concludes as follows:

## I. BACKGROUND

This case arises out of a series of investment transactions. Between 1994–1998, Plaintiffs invested in a series of variable and fixed annuities through and on the advice of an investment broker, Richard W. Desimone. In 2000, Plaintiffs brought a thirty count complaint (the "Complaint") against Desimone, Desimone's employers, and the insurance companies that issued the annuities,[1] claiming that the defendants breached their fiduciary duty, made negligent misrepresentations and omissions of material facts, and defrauded the Plaintiffs.[2] Plaintiffs' Complaint alleged that Desimone invested Plaintiffs in unsuitable investments and engaged in what is known as "churning" or "twisting." "Churning" or "twisting" is a securities concept where investments are purchased by a broker (or on the advice of a broker), quickly sold, and then other investments are purchased to generate commissions for the broker to the detriment of the investor. Despite allegedly investing Plaintiffs in unsuitable investments and churning or twisting their investments, Desimone's investment advice increased Plaintiffs' $320,000 portfolio value by approximately $260,000 over a six year period.

Annuities are an investment vehicle sold by insurance companies to investors usually for a fixed time period and differ widely

---

1. Desimone and Aragon Financial Services, Inc., a registered broker dealer, are the only remaining defendants.

2. This Court previously dismissed Plaintiff's counts for intentional infliction of emotional distress (Dkt.# 134). Plaintiffs also have a claim of negligent supervision against Aragon.

on their terms and features.[3] There are two main types of annuities: fixed and variable. A fixed annuity gives an annuitant certainty on what payments he will receive either monthly or yearly in the future. A variable annuity does not have the same level of certainty. Its benefits fluctuate with the success of the investments within the annuity. Both types of annuities were sold to the Plaintiffs.

Plaintiffs seek as compensatory damages: (1) the commissions that Desimone received; (2) their well managed account losses (the additional profit that they would have made had their money had been properly invested and not churned); and (3) payment for the emotional distress they suffered. Additionally, Plaintiffs seek an award of punitive damages. Desimone has moved for summary judgment, arguing that Plaintiffs cannot show that they suffered any damages.[4] At the heart of whether Plaintiffs suffered any damages is the expert report, deposition, and affidavit of Plaintiffs' damages expert, John Lyman.

### Lyman's Report

■ According to his report, Lyman calculated Plaintiffs' compensatory damages with three different calculations. For the first two calculations, Lyman used a measure of damages known as the well managed account measure of damages.[5] The first two calculations differ primarily in the allocation of Plaintiffs' principal. The first calculation mirrored the principal allocation (the percentage invested in stocks versus bonds) that Plaintiffs' annuities had.

The second calculation was based on a 50%–50% allocation of principal between stocks and bonds. In the third calculation, the "Statutory Damages with 10% Interest" calculation, Lyman took the principal amount invested by Plaintiffs added 10% interest per year and also added the estimated commission for Desimone to reach an amount that allegedly represents the lost opportunity cost to Plaintiffs.

### The Motion for Summary Judgment and Plaintiffs' Response

In his motion for summary judgment, Desimone attacks Lyman's calculations. First, Desimone argues that Lyman's calculations are speculative because Lyman ignored the investment objectives, income, and health condition of the Plaintiffs. Second, Desimone argues that Plaintiffs calculation is a comparison of "apples and oranges" because Lyman's calculations use investment indicies that are more risky than the annuities that Plaintiffs invested in. Third, Desimone argues that Lyman's calculations do not take into account tax implications and commissions that would be due if Plaintiffs invested in the securities utilized by Lyman.

Plaintiffs respond that damages in securities cases are uncertain, but that uncertainty does not preclude recovery. Plaintiffs also respond that Desimone's motion is more a question of how much credibility and weight should be given to Lyman's opinion (which is not a proper subject for a motion for summary judgment) than a

---

3. The annuities in this case allowed the Plaintiffs: (1) tax deferral on their transactions; (2) ten (10%) percent withdraw per year without penalty; (3) a guaranteed minimum rate of return; and (4) nursing home riders that allowed the annuitant (the Plaintiffs) to withdraw their entire investment without penalty should they enter a nursing home.

4. Desimone also moved for summary judgment seeking to bar claims resulting from the

sale of securities more than four years ago. Plaintiffs did not respond to the statute of limitations argument in their response.

5. The well managed account measure of damage purports to allow a plaintiff to recover the difference between what his portfolio was worth at the end of the defendant's fraudulent conduct and what his portfolio should have been worth had it been managed without fraud.

question of whether any evidence supports their compensatory damage calculations.

## II. LEGAL ANALYSIS

### A. Motion for Summary Judgment

This Court concludes that Desimone's motion should be granted in part and denied in part. Subject to proof at trial, Plaintiffs can recover either the actual surrender fees paid (the surrender fees charged less any bonuses paid for buying a new annuity) or the transactions that jury determines were "churned" or their well managed account losses. Plaintiffs are not entitled to recover as compensatory damages a statutory measure of damages plus ten percent, commissions that they did not pay, or an amount for their emotional distress.

#### 1. Standard of Review and what law applies.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.1991). When the party moving for the summary judgment does not bear the burden of persuasion on the issue at trial, the moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

In this case, this Court's jurisdiction is based upon diversity, 28 U.S.C. § 1332, and this case arises under Florida law. In diversity cases arising under Florida law, a federal court is bound by the law articulated by the Florida Supreme Court. *See Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1118 (11th Cir.1990). If the Florida Supreme Court has not spoken on an issue, Florida District Court of Appeals decisions control absent persuasive indication that the Florida Supreme Court would rule otherwise. *See Blanchard v. State Farm Mut. Auto. Ins. Co.*, 903 F.2d 1398, 1399 (11th Cir.1990). If there is no authority, this Court is to make an "educated guess" as to how a Florida court would rule. *See Shapiro*, 899 F.2d at 1118–19.

#### 2. The Appropriate Measure of Damages

Neither party has cited a Florida case dealing with what damages are available under the remaining causes of actions against Desimone (fraud, breach of fiduciary duty, or negligent misrepresentation), nor has a party cited a Florida case involving the damages available for churning. Both parties instead rely on cases from other jurisdictions that, while persuasive, are not binding on this Court.

Desimone is correct that generally under Florida law a Plaintiff must suffer and prove damages to be successful on a fraud, negligent misrepresentation, or breach of fiduciary duty claim. *See Casey v. Welch*, 50 So.2d 124, 124 (Fla.1951) (per curiam) (involving fraud claim); *Camper Corral, Inc., v. Perantoni*, 801 So.2d 990, 991 (Fla. 2d DCA 2001) (involving fiducia-

ry duty claim); *Florida Women's Medical Clinic, Inc. v. Sultan,* 656 So.2d 931, 933 (Fla. 4th DCA 1995) (containing the elements for a negligent misrepresentation claim); *Empire Fire & Marine Ins. Co. v. Black,* 546 So.2d 732, 732 (Fla.App. 3d DCA 1989) (involving fraud claim). Florida courts have held, however, that finding a breach of fiduciary duty will support an award of punitive damages, even if no compensatory damages are awarded. *See Ault v. Lohr,* 538 So.2d 454, 456 (Fla.1989); *Mortellite v. American Tower, L.P.,* 819 So.2d 928, 934–35 (Fla. 2d DCA 2002).[6]

■ The purpose of compensatory damages in a tort case is to restore the injured party to the position it would have been had the wrong not been committed. *See Glades Oil Co. v. R.A.I. Management, Inc.,* 510 So.2d 1193, 1195 (Fla. 4th DCA 1987). Florida tort law allows one of two measures of damages to accomplish this purpose in a fraud case. *See Gregg v. U.S. Industries, Inc.,* 887 F.2d 1462, 1465–66 (11th Cir.1989); *Nordyne, Inc. v. Florida Mobile Home Supply, Inc.,* 625 So.2d 1283, 1286–87 (Fla. 1st DCA 1993); *Strickland v. Muir,* 198 So.2d 49, 51 (Fla. 4th DCA 1967) (holding two measure of compensatory damages in fraud case involving securities). The first measure of damages is known as the "out-of-pocket-rule." *See Nordyne,* 625 So.2d at 1286–87. The out-of-pocket-rule allows for recovery of amounts that the plaintiff actually lost. *See DuPuis v. 79th Street Hotel, Inc.,* 231 So.2d 532, 536 (Fla.App. 3d DCA 1970). The second measure of damage is known as the "benefit-of-the-bargain-rule" and is utilized when the out-of-pocket-rule does not fully compensate the plaintiff. *See Nordyne,* 625 So.2d at 1286–87. Under the benefit-of--bargain-rule, the plaintiff is entitled to the loss of its bargain, similar to

a recovery on a warranty. *See DuPuis,* 231 So.2d at 536.

■ The two measures of damages are utilized together in what is known as the "flexibility theory." *See Nordyne,* 625 So.2d at 1286–87. Under the flexibility theory:

(1) if the defrauded party is content with recovery of only the amount he actually lost, his damages will be measured under [the out-of-pocket-rule]; (2) if the fraudulent representation also amounts to a warranty, recovery may be had for the loss of the bargain, because a fraud accompanied by a broken promise should cost the wrongdoer as much as the latter alone; (3) where the circumstances disclosed by the proof are so vague as to cast virtually no light upon the value of the property had it conformed to the representations, the court will award damages equal only to the loss sustained; and (4) where the damages under the 'benefit of the bargain' rule are proved with sufficient certainty, that rule will be employed.

*DuPuis,* 231 So.2d at 536 (quoting 37 Am. Jur.2d Fraud and Deceit § 352).

No Florida case has considered or classified what damages are available for churning against a broker under Florida law. Federal securities and other state fiduciary duty cases have discussed what damages are available in churning cases. *See, e.g., Miley v. Oppenheimer & Co., Inc.,* 637 F.2d 318, 326 (5th Cir.1981) (involving federal securities claims, Texas statutory claims, and Texas breach of fiduciary duty claims).

In *Miley,* the former Fifth Circuit held that churning securities causes two distinct types of harm to an investor. *See id.* The

6. *Ault* and *Mortellite* alone preclude this Court from granting final summary judgment because, even if Plaintiffs had no compensato-

ry damages, Plaintiffs could recover punitive damages on their breach of fiduciary duty claim.

first type of harm is the commissions paid by the investor. *See id.* The second type of harm is the decline in the value of the portfolio.[7] *See id.* In *Miley*, the investor's portfolio declined in value because of the commissions charged by the broker. *See id.* The court discussed the inherent difficulties and imprecision of approximating the decline in value of a portfolio because of the nature of churning and the uncertainties in the stock market. *See id.* at 327. The court warned that "neither the difficulty of the task nor the guarantee of imprecision in results can be a basis for judicial abdication from the responsibility to set fair and reasonable damages in a case." *Id.*

The former Fifth Circuit stated that the trial judge "must be afforded significant discretion to choose the indicia by which such estimation is to be made, based primarily on the types of securities comprising the portfolio." *Id.* at 328. The court then approved the technique contained in *Rolf v. Blyth, Eastman, Dillon & Co.*, 570 F.2d 38, 49 (2d Cir.1978). *Miley*, 637 F.2d at 328.

*Rolf*, like *Miley*, involved a stock portfolio that declined in value because of the fraudulent conduct of a broker. *Rolf*, 570 F.2d at 42. In determining the proper measure of damages for the decline in a portfolio, the Second Circuit found that a trial court should compute the market value of the portfolio on the date that the fraud began, subtract the value of the portfolio when the fraud ceased, and reduce (or increase) this number by the percentage decrease (or increase) in an appropriate index of market value during the same time period. *See id.* at 49. This last step was taken by the court to prevent the plaintiff from recovering damages because of a market decline (or increase) unrelated to the broker's conduct. *See id.*

While *Miley* and *Rolf* involved portfolios that lost money, some courts have extended this method of calculating damages to cases where the investor made a profit even with churning. *See, e.g., Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 906 F.2d 1206, 1218–19 (8th Cir.1990) (holding that actual damages for churning include additional profits that would have been made but for the broker's churning of the account); *also Nesbit v. McNeil*, 896 F.2d 380, 385–86 (9th Cir.1990), *abrogated on other grounds, Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (holding that investor entitled to excess commissions even if account made profit and defendant not entitled to offset commissions with profit). Those courts reason that such awards have a deterrent effect and fraud should not be rewarded just because the investor made a profit. *See Nesbit*, 896 F.2d at 386.

■ Based on the foregoing discussion, this Court concludes that a Florida court in a churning case would allow as "out-of-pocket" damages: (1) any excessive commissions or expenses paid by the investor; and (2) any actual losses to the portfolio (when the portfolio declines in value) caused by churning. This Court further concludes that a Florida court would allow in an appropriate churning case "benefit-of-the-bargain" damages, which consist of an investor's well managed account losses.

This Court bases its conclusions on Florida's flexibility theory and the availability of benefit-of-the-bargain damages. Allowing a Plaintiff to recover the diminished profits caused by a broker's fraud is consistent with allowing a plaintiff to recover the loss of his bargain. Further, this Court adopts the reasoning in *Nesbit* that

---

7. In the context of a stock portfolio that declined in actual value, the former Fifth Circuit termed the second harm to be an "out-of-pocket" loss. *See id.* at 327.

courts should not excuse fraudulent conduct just because an account was profitable. To do so would encourage brokers to commit fraud.

Defendant's argument (that Plaintiffs' cannot prove their damages based on Lyman's report and testimony with sufficient precision) is appealing in a complex case where calculating damages is difficult, like the present case. This Court is mindful, however, that it cannot abdicate its role in determining fair and reasonable damages. Plaintiffs are cautioned that benefit-of-the-bargain damages are available only when they are established with sufficient certainty. *See, e.g., DuPuis*, 231 So.2d at 535 (finding insufficient evidence to support a benefit-of-the-bargain award); *Nordyne*, 625 So.2d at 1287 (stating evidence convincing that but for misrepresentations plaintiff would have enjoyed profits).

At this stage, Lyman's report and deposition testimony sufficiently support a claim for a well managed account measure of damages. The allocations between stock and bonds utilized by Lyman were, in his opinion, suitable investments for Plaintiffs. Moreover, according to his deposition, dividends that Plaintiffs would have received would have largely offset additional costs (commissions and taxes) that Plaintiffs would have incurred by investing differently.

Plaintiffs, however, are not entitled to the commissions earned by Desimone because Plaintiffs did not pay them. In all the cases cited by the parties, the investors recovered only the commissions paid by them. *See Miley*, 637 F.2d at 326

(stating "the investor is harmed by *having had to pay excessive commissions ....*") (emphasis added). Desimone received commissions from the insurance companies and not Plaintiffs.[8] The only fees that Plaintiffs paid because of any churning were surrender charges, which were partially offset by bonuses. To the extent that the jury determines that the surrender charges were excessive and the charges appear to exceed the bonuses, Plaintiffs would be entitled to that amount as compensatory damages (if Plaintiffs elect or this Court selects the out-of-pocket measure of damages and prevents consideration of the benefit-of-the-bargain measure).

This Court is also granting Desimone's motion as to Lyman's "Statutory Damages with Interest" measure of damages. *Gallo v. Dep't of Banking and Finance* does not support the proposition that a ten percent return per year is an appropriate measure of damages in a churning case. 749 So.2d 582 (Fla. 5th DCA 2000). Instead, *Gallo* stands for the proposition that pre-judgment interest on an award of damages is an additional element of compensatory damages. *See id.* at 584. *Gallo* says nothing about using the pre-judgment interest rate as a separate measure of damages. This Court has not found any case allowing for such a recovery and concludes that there is no evidence that such a calculation is a fair or reasonable approximation of the losses sustained by Plaintiffs.

Finally, Plaintiffs are not entitled to recover as part of their compensa-

---

8. In the event and to the extent that Desimone's commissions would be recoverable, Plaintiffs have offered no evidence of what those commissions actually were. Plaintiffs should have discovered those amounts either from Desimone's former employers or the insurance companies, all of which were, at one time, parties to this dispute. Unlike well managed account damages, the commissions Desimone earned are readily determinable and Lyman's guess, estimation, or approximation is insufficient to create an issue of material fact.

tory damages any amounts for emotional distress. Generally, Florida law limits recovery for emotional distress to situations where the plaintiff suffers some physical injury or impact. *See R.J. v. Humana of Florida, Inc.*, 652 So.2d 360, 362–63 (Fla. 1995). There are three recognized exceptions to the impact rule: (1) intentional infliction of emotional distress; (2) injury to a family member in a plaintiff's presence; and (3) wrongful birth. *See id.* at 363. No physical impact has been alleged by Plaintiffs and no exception exists to fit the facts of this case.

### 3. Statute of Limitations

 Next, Desimone argues that the applicable statute of limitations bars Plaintiffs' claims arising from annuities purchased prior to April 26, 1996. According to Desimone, Plaintiffs received both the annuity contracts and monthly statements concerning those annuities and should have discovered any alleged fraud or misrepresentation when the contracts or statements were provided. Plaintiffs failed to respond to Desimone's argument.

 No Florida case addresses how the statute of limitations applies in a churning case. Desimone is correct that Florida Statutes section 95.11(3) provides a statute limitation period of four years for actions founded on fraud, negligent misrepresentation, or breach of fiduciary duty. Fla. Stat. § 95.11(3). Generally, the statute of limitations runs when a person has notice of an invasion of legal rights or notice of his right to a cause of action. *See Snyder v. Wernecke*, 813 So.2d 213, 216 (Fla. 4th DCA 2002). In fraud cases, however, the statute of limitations begins running either at the time that plaintiff

learned of the fraud or when the plaintiff reasonably should have learned about the facts supporting the fraud claim. *See* Fla. Stat. § 95.031(2); *Moneyhun v. Vital Indus., Inc.*, 611 So.2d 1316, 1322 (Fla. 1st DCA 1993); *Bearse v. Main Street Investments*, 220 F.Supp.2d 1338, 1344–45 (M.D.Fla.2002).[9]

 Florida law, however, recognizes an exception to the general statute of limitation rules for torts that are continuing in nature. *See Seaboard Air Line R.R. v. Holt*, 92 So.2d 169, 170 (Fla.1956); *Pearson v. Ford Motor Co.*, 694 So.2d 61, 67–68 (Fla. 1st DCA 1997); *Halkey–Roberts Corp. v. Mackal*, 641 So.2d 445, 447 (Fla. 2d DCA 1994). Under the continuing torts doctrine, the statute of limitations runs from the date that the tortious conduct ceases. *See Halkey–Roberts*, 641 So.2d at 447.

This Court has not found a case addressing whether the continuing tort doctrine would apply in a churning case. In churning cases, however, courts have found churning to be a "unified offense" because of its nature and such cases require a "hindsight analysis of the *entire* history of a broker's management of an account and of his pattern of trading that portfolio ...." *Miley*, 637 F.2d at 327 (emphasis added). This comment leads this Court to conclude that the continuing torts doctrine could apply in a churning case. The factual question of whether Desimone's actions constituted a continuing tort precludes summary judgment. To what extent, if any, the concept applies to this case is an issue for the trier of fact to decide. Accordingly, Desimone's motion is denied.

---

9. The delayed discovery rule contained in Fla. Stat. § 95.031(2) does not apply to any cause of action other than Plaintiffs' fraud cause of action. *See Davis v. Monahan*, Case No. SC01–1157, 2002 WL 31477296, at *3 (Fla. Nov.7, 2002); *Halkey–Roberts Corp. v. Mackal*, 641 So.2d 445, 447 (Fla. 2d DCA 1994). This does not, however, effect the outcome of this Court's decision.

### B. Motion to Strike Lyman's Affidavit

Next, Desimone argues that Lyman's affidavit in opposition to summary judgment was filed in bad faith. Rule 56(g) provides that a party that files an affidavit in bad faith shall be required to pay the attorneys' fees and expenses of the opposing party in striking the affidavit. Fed. R. Civ. Pro. 56(g). Even when an affidavit was filed in bad faith, courts have held that when a court does not utilize an affidavit sanctions under Rule 56(g) are inappropriate. *See Faberge, Inc. v. Saxony Products, Inc.*, 605 F.2d 426, 429 (9th Cir.1979) (per curiam); *Jaisan, Inc. v. Sullivan*, 178 F.R.D. 412, 417 (S.D.N.Y.1998); *RAF Financial Corp. v. Resurgens Communications Group, Inc.*, case no. 89–A–1878, 1991 WL 149822, at *6 (Bkrtcy. D.Conn. Aug. 1, 1991).

This Court did not utilize Lyman's affidavit in making its summary judgment determination because it is clear that the affidavit just restates Lyman's deposition testimony. Accordingly, the Motion to Strike Affidavit of John Lyman is denied.

### C. Motion for Default Judgment

Finally, Plaintiffs moved for default judgment against Aragon. According to the Complaint, Aragon employed Desimone after July 1998. Plaintiffs allege that Aragon negligently supervised Desimone and committed fraud, made negligent misrepresentations, and breached its fiduciary duty because of Desimone's conduct. On May 16, 2002, this Court entered an Order (Dkt.211), allowing Aragon's counsel to withdraw. This Court required Aragon to obtain new counsel within thirty days and warned that its failure to do so may result in a default judgment being entered. Aragon failed to obtain new counsel or otherwise comply with this Court's order. On July 17, 2002, Plaintiffs filed this Motion for Entry of Default Judgment (Dkt.# 215) against Aragon. On August 6, 2002, this Court entered an Order to Show Cause

(Dkt.# 216) requiring Aragon to show cause why it failed to comply with this Court's order. Aragon again has failed to respond or comply with this Court's orders. This Court, therefore, enters a default final judgment against Aragon as to its liability. Damages will be determined later at trial with the damages (if any) that are found to have been caused by Desimone's alleged misconduct.

Accordingly, it is **ORDERED and ADJUDGED:**

1. Desimone's Motion for Summary Judgment (Dkt.# 229) is **GRANTED IN PART and DENIED IN PART** for the reasons stated above.

2. Desimone's Motion to Strike Affidavit (Dkt.# 243) is **DENIED.**

3. Plaintiffs' Motion for Default Judgment against Defendant Aragon Financial Services, Inc. (Dkt.# 215) is **GRANTED** as to liability.