660 So.2d 1075 (1995)
U.S.B. ACQUISITION COMPANY, INC., a Florida corporation, d/b/a U.S. Block Corporation, and Walter R. Sjogren, Sr., Appellants/Cross-Appellees,
v.
Allen G. STAMM, William Bell, and Thomas Lagano, Appellee/Cross-Appellants.
v.
UNITED STATES of America; Christiansen, Jacknin & Tuthill, P.A., a Florida professional association, as escrow agent, and T.A.W. Corporation, f/k/a U.S. Block Corporation, Appellees.
No. 92-3138.
District Court of Appeal of Florida, Fourth District.
August 9, 1995.
Rehearing Denied October 17, 1995.
*1077 Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, for appellants/cross-appellees.
F. Lee Bailey and Ann Fishman of Bailey, Fishman, Freeman & Ferrin, West Palm Beach, for appellee/cross-appellant-Allen G. Stamm.
Basil E. Dalack of Saylor & Gwynn, West Palm Beach, for appellees/cross-appellants-William Bell and Thomas Lagano.
OWEN, WILLIAM C., Jr., Senior Judge.
Appellant, buyer of a concrete manufacturing business under the terms of an acquisition agreement, sued the sellers, Appellees, for damages alleging breach of contract and various tort theories. Appellees counterclaimed for the balance of the purchase price represented by promissory notes secured by mortgages on the equipment and real property. The issues raised by Appellant as well as the issues raised by Appellees as cross-appellants all arise out of rulings by the trial court on the parties' respective post-verdict motions. We affirm in part and reverse in part.
The following are the salient facts. Appellees Stamm, Bell and Lagano decided to operate a concrete manufacturing business under the corporate name of U.S. Block. Stamm, who owned 50% of the stock, provided the equipment, including a used ready mix plant with a capacity of 100 yards per hour. Bell and Lagano each owned 25% of the stock and operated the business. Production began in March 1986 but because of operating losses Appellees decided in July 1986, to look for a buyer. The business was listed with a broker who prepared sales brochures describing the ready mix plant as new with a capacity of 250 yards per hour. This brochure came to the attention of Mr. Sjogren, the owner of a sand extraction company in New Jersey, who was interested in learning the ready mix concrete business so that he could operate a similar type business in conjunction with his sand extraction business. Over the next three or four months Sjogren and several of his associates, including one Carl Stott, a CPA, and chief financial officer of his sand extraction company, made visits to the U.S. Block plant, inspecting the facilities and reviewing financial statements or compilations, and meeting with Lagano on several occasions. Stott, who was experienced in business acquisitions, recognized that the information in the sales brochure was unreliable and made his own examination of the equipment inventory. As to reviewing the financial condition of the business, however, Stott did little more than examine financial statements or compilations which showed losses for all of the preceding months of operation except for November and December, which showed profits. Although Stott had reservations about the purchase, particularly as to why the sellers would go through a period of losses and then *1078 wish to sell as soon as the business began to become profitable, he apparently felt satisfied after Lagano told him that January would also be a profitable month. These various negotiations led ultimately to the parties executing an asset purchase agreement and closing on the sale of the business in February 1987.
Following the sale of its assets, U.S. Block changed its name to T.A.W. Corp. and the buyer, U.S.B. Acquisition, Inc., changed its name to U.S. Block. By June 1987, when it became apparent that, contrary to Mr. Lagano's rosy predictions, the business was not going to turn profitable, Mr. Sjogren went to Stamm, Bell and Lagano and sought, unsuccessfully, to have the sale rescinded. In September of that year, Appellant brought this action against Stamm, Bell, Lagano and T.A.W. Corp. seeking rescission and, alternatively, damages for breach of contract and for fraud. Shortly thereafter, the buyer defaulted on payments due on the promissory notes which formed part of the consideration for the purchase, whereupon Lagano, with the knowledge and approval of Stamm and Bell, entered the premises of U.S. Block and removed some trucks and equipment. As a result of that conduct, Appellant amended its pleadings to add counts for trespass, conversion and the tort of intentional interference with a business relationship. In due course, Appellees brought an action against the buyer as maker, and Sjogren, as guarantor, for the balance due on the promissory notes.[1] At or before trial, the buyer's counts for rescission and fraud were dropped, and this case was tried on the remaining counts of the complaint and the sellers' counterclaim on the promissory notes. The court reserved ruling on the several motions for directed verdict of the respective parties and submitted the case to the jury with an itemized or special verdict form. Relative to the issues which we decide here, the jury (1) found that the sellers had breached the asset purchase agreement, for which it awarded to the buyer damages of $131,000 for the breach concerning the batch plant and damages of $800,000 for the breach concerning the operating losses; (2) found that Stamm and Lagano had committed a trespass for which it awarded damages of $4,244.36; and (3) found that Stamm, Bell and Lagano had tortiously interfered with the buyer's business relationships, for which it awarded damages of $16,000.
The first and principal issue raised by Appellant is that the trial court erred in granting the sellers' post-trial motion for directed verdict on the issue of Plaintiff's operating losses and deleting from the verdict and the subsequent judgment the award of $800,000. There was no error in that respect.
By paragraph 10 of the Asset Purchase Agreement, the sellers warranted and represented, relevant to this case, that (1) the permits and licenses required for operation of the business and use of the real property had been obtained and were in full force and effect; (2) the financial statement of the company dated January 11, 1987 reflecting the financial status of the company as of December 31, 1986 was accurate and complete in all material respects; (3) the company had no liabilities or obligations except as reflected on a separate exhibit; and (4) the company's accounts receivable to be assigned to the buyer at closing were currently collectible at the aggregate gross recorded amounts thereof. The buyer's count for breach of contract alleged in essence that these warranties had been breached as a result of which the consideration paid for the business was far greater than its actual value. The damage sought under this count was the difference between the value of the business as represented to the buyer by such warranties, and the actual value of the business as it existed on the date of closing. Although the buyer offered evidence from which the jury could and did find the sellers had breached the warranties, the buyer offered no evidence as to the damages alleged, i.e., the difference between the value of the business as it would have been had it been as represented and warranted by the sellers and the actual value of the business as it *1079 existed on the date of closing. Instead, the buyer's evidence on its damages consisted of proof that in the course of the four years it had operated the business it had sustained net operating losses of $1,009,000. That evidence simply would not support a verdict for damages on the theory advanced by the buyer. Although this case was tried on the theory denominated "breach of contract," the essence of the buyer's complaint was that certain of the express warranties and representations contained in the agreement were not true. The proper measure of damages for such misrepresentation is the difference between the value of the business as it would have been had it been as represented and warranted and the actual value of the business, determined as of the date of the sale or, in the alternative, the difference in value between the purchase price and the actual value at the time of sale. Perlman v. Ferman Corp., 611 So.2d 1340 (Fla. 4th DCA 1993); Martin v. Brown, 566 So.2d 890 (Fla. 4th DCA 1990). Because the buyer simply failed to adduce any evidence from which the jury could properly determine either of these two measures of damage, it was proper for the court to direct a verdict for the sellers on this issue.
Appellant argues that it was entitled to breach of contract damages which are all damages that naturally and proximately result from the breach and are within the contemplation of the parties. There is no basis in the evidence to support a finding that the parties to the contract contemplated, at the time of entering into the contract, that if any of the warranties or representations of the seller were not true the business would continue to be operated at a loss, which over a four year period was slightly in excess of $1,000,000.00. The purchase price of the business was $1,700,000.00, of which amount, $1,550,000.00 was the value of assets acquired by the buyer, and the remainder represented consultation contracts awarded to the sellers.
Finally, Appellant argues here that, in any event, paragraph 15 of the agreement, an indemnification provision, required the sellers "to indemnify and hold harmless buyer against and in respect of any and all damages, deficiencies, losses or liabilities resulting from any misrepresentation, breach of warranty or non-fulfillment of any covenant or agreement on the part of the sellers." We think it clear that the indemnification paragraph, considered in its entirety, and particularly with respect to the clause requiring that the buyer notify the sellers of any claim or the commencement of any action and the opportunity to compromise, settle or defend the same, was properly construed by the trial court as intending indemnification against claims of or liability to third parties and was not intended by the parties to extend indemnification against the buyers' operating losses subsequent to the purchase. Construction of contractual language is usually a matter of law for the court, Automatic Canteen Co. v. Butler, 177 So.2d 712 (Fla. 3d DCA 1965),[2] and where an indemnity provisions is included as an incident to a contract, the main purpose of which is not indemnification, the indemnity provision must be construed strictly in favor of the indemnitor. Westinghouse Elec. Corp. v. Prudential Ins. Co., 547 So.2d 721, 722 (Fla. 1st DCA 1989). Additionally, to the extent any ambiguity existed, the contract must be construed most strongly against the party who drafted the instrument, Hurt v. Leatherby Ins. Co., 380 So.2d 432 (Fla. 1980), in this case, the buyer. To construe this indemnification provision as advocated by the buyer would, in essence, make the sellers absolute guarantors of the future profitability of the business for an open-ended period of time. The trial court properly construed this indemnity provision as not encompassing operating losses of the business.
By cross-appeal, Appellees assert that it was error for the trial court to deny their post-verdict motions for directed verdict on breach of contract damages regarding the batch plant. As mentioned in the factual recitation above, the buyer had alleged that it was fraudulently induced to purchase the *1080 business by virtue of having relied to its detriment upon the sellers' intentional misrepresentation as to the batch plant capacity. It was in support of the fraudulent inducement claim that the buyer was able to offer evidence of pre-agreement representations, both verbal and written, made by and on behalf of the sellers that the batch plant had a capacity of 250 yards per hour and was new. At the close of the plaintiff's case, the court directed a verdict for the sellers on the claims of fraud, and thus, as concerns the batch plant, the issue was submitted to the jury solely on allegations of breach of contract.
It is not disputed that the buyer received title to and delivery of the batch plant as described in the agreement. Nowhere therein was there any recitation or representation as to its capacity. The court held, however, that evidence of the pre-agreement representations concerning the batch plant were properly admissible in support of the breach of contract claim because of what he perceived to be a conflict between paragraphs 16 and 24 of the agreement.
Paragraph 16 of the contract provided as follows:
All representations and covenants made by each party shall survive the closing for the benefit of the other party.
Paragraph 24 of the agreement contained the following language:
This is the parties' entire agreement and may not be modified except in writing signed by all the parties hereto.
It was the sellers' contention below, as it is here, that the representations and covenants to which paragraph 16 referred, when construed with the integration language of paragraph 24, was intended to mean only those representations and covenants as set forth in the asset purchase agreement, and thus the pre-agreement representations, while admissible in support of the claim of fraud, could not, under the doctrine of merger, be considered in support of the claim for breach of contract. The trial court rejected this argument and concluded, incorrectly we believe, that the merger clause in paragraph 24 was negated by the survival clause in paragraph 16.
Every provision in a contract should be given meaning and effect and apparent inconsistencies reconciled if possible. Excelsior Ins. Co. v. Pomona Park Bar and Package Store, 369 So.2d 938, 941 (Fla. 1979); Arthur Rutenberg Corp. v. Pasin, 506 So.2d 33, 34 (Fla. 4th DCA 1987). If clauses in a contract appear to be repugnant to each other, they must be given such an interpretation and construction as will reconcile them if possible. Triple E Dev. Co. v. Floridagold Citrus Corp., 51 So.2d 435, 438-39 (Fla. 1951). We think the proper construction of these two provisions is, as argued by the sellers below and here, that paragraph 16 means that the representations and covenants within the agreement itself survive the closing, and paragraph 24 is a merger clause which provides that the agreement as written constitutes the parties' entire agreement. Such an interpretation not only reconciles these two provisions but also recognize a well-settled principle that representations made before or during the signing of a contract are presumed to have merged in the written agreement. Schubot v. McDonald's Corporation, 757 F. Supp. 1351, 1357 (S.D.Fla. 1990), aff'd, 963 F.2d 385 (11th Cir.1992); Financial Fed. Sav. & Loan Ass'n v. Continental Enters., Inc., 338 So.2d 907, 908 (Fla. 3d DCA 1976). See also Cassara v. Bowman, 136 Fla. 302, 186 So. 514 (1939); Miami Lime & Chem. Co., Inc. v. York Ice Mach. Corp., 104 F.2d 312 (5th Cir.1939); Azar v. Richardson Greenshields Sec., Inc., 528 So.2d 1266, 1269 (Fla. 2d DCA 1988). Given the proper construction of paragraph 16, the evidence pertaining to pre-agreement representations made by or on behalf of the sellers, and to which their objections were overruled, would be in violation of the parol evidence rule to the extent that such extrinsic evidence was offered to add to the otherwise valid, complete and unambiguous written agreement. The buyer's fraud claim having been directed out, the parol evidence rule made inadmissible the pre-agreement representations. Federal Deposit Ins. Corp. v. Hemmerle, 592 So.2d 1110 (Fla. 4th DCA 1991), rev. denied, 601 So.2d 552 (Fla. 1992). Absent that evidence, there was no basis *1081 upon which the jury could properly find a breach of the contract as it related to the batch plant. It was error for the court to deny the sellers' motion for directed verdict on this item.
Appellees also contend that the court erred in denying their motion for directed verdict on the tortious interference claim. We agree. There was no evidence that Appellees interfered with any ongoing business relationship between the buyer and any identifiable person or entity, an essential element. North Am. Van Lines, Inc. v. Ferguson Transp., Inc., 639 So.2d 32 (Fla. 4th DCA 1994).
Finally, both Appellants and Appellees appeal denial of their respective motions for attorney's fees and costs. Appellants' claim for attorney's fees arose out of the indemnity provisions of the agreement and were properly not allowed. Appellees' claim for attorney's fees arose out of the contractual provisions of the promissory notes and should have been allowed. Sybert v. Combs, 555 So.2d 1313 (Fla. 5th DCA 1990). Costs should be allowed to the prevailing party, section 57.041(1), Florida Statutes; Weitzer Oak Park Estate, Ltd. v. Petto, 573 So.2d 990 (Fla. 3d DCA 1991), to be determined upon entry of judgment in accordance with this court's decision.
The remaining points on appeal and cross-appeal do not demonstrate error nor require discussion.
The judgment is reversed and this cause remanded for entry of judgment not inconsistent with this court's decision.
REVERSED AND REMANDED.
GUNTHER, C.J., and FARMER, J., concur.
NOTES
[1] When the two actions were subsequently consolidated, the suit on the notes was designated as a counterclaim.
[2] Cited by Appellant for the proposition that contractual indemnity provisions such as the one here are not necessarily limited to third party claims. While that position is correct, the intent of the parties from any particular contract must still be determined from the language employed.