726 So.2d 828 (1999)
TECA, INC., a Florida corporation and Theodore Mena, Appellants/Cross-Appellees,
v.
WM-TAB, INC., a Florida corporation, Appellee/Cross-Appellant.
No. 96-4047
District Court of Appeal of Florida, Fourth District.
February 3, 1999.
Rehearing Denied March 23, 1999.
Richard G. Coker, Jr. of Brady & Coker, Fort Lauderdale, for appellants/cross-appellees.
Robert N. Reynolds of Robert N. Reynolds, P.A., Winter Park, for appellee/cross-appellant.

*829 ON MOTION FOR REHEARING EN BANC

GROSS, J.
We grant appellants' motion for rehearing, withdraw the previously issued per curiam affirmance, and substitute this opinion. Sua sponte, we consider this case en banc to resolve a conflict between two of our opinions over the proper resolution of a case on appeal where a plaintiff has presented no evidence at trial on the correct measure of damages.
Pursuant to a written contract dated December 5, 1988, appellee, WM-TAB, Inc., purchased a gas station/convenience store business from appellants, Theodore Mena, and Teca, Inc. for $325,000. Paragraph 7.09 of the contract provided as follows:
Seller has not received any notice of, and does not know of, any legal action, suit, proceeding, or investigation pending or threatened before any court, administrative, or governmental agency or arbitration panel or of any conditions constituting a basis for the same relating to the BUSINESS or the assets.
In July, 1988, appellants had been served with a complaint by which the State of Florida, Department of Transportation, sought to condemn a portion of the property upon which the business was situated. The public purpose of the condemnation was to widen and improve University Drive. The entire construction project, with its attendant disruption of area businesses, was anticipated to take about two years to complete. The construction included the installation of a median on University Drive which limited access to the business.
In its final judgment, the trial court made the following findings of fact in support of its conclusion that appellants had breached the warranty contained in paragraph 7.09: appellants never advised WM-TAB of the lawsuit or the pending road construction; both the construction and the alteration of access "caused a hardship on [WM-TAB's] business;" WM-TAB would not have purchased the business had it known of the road widening; and the "change in access has had considerable impact on the business' profitability and therefore its value." The court assessed damages of $100,000.
The gravamen of the breach of contract count was that an express warranty in the contract was not true. The facts contained in the representation affected the purchase price; had the true status of pending litigation been disclosed, the buyer would not have closed or would have reduced its offer to take into consideration the impact of the new construction on future business. In a similar case involving express warranties in a contract for the sale of a business which proved to be untrue, this court adopted a measure of damages from cases involving fraudulent misrepresentation:
Although this case was tried on the theory denominated "breach of contract," the essence of the buyer's complaint was that certain of the express warranties and representations contained in the agreement were not true. The proper measure of damages for such misrepresentation is the difference between the value of the business as it would have been had it been as represented and warranted and the actual value of the business, determined as of the date of the sale or, in the alternative, the difference in value between the purchase price and the actual value at the time of the sale.
U.S.B. Acquisition Co. v. Stamm, 660 So.2d 1075, 1079 (Fla. 4th DCA 1995); see also Concept, L.C. v. Gesten, 662 So.2d 970 (Fla. 4th DCA 1995).
In this case there was no testimony fixing the actual value of the business on the date of the sale, a crucial element in the damage equation. Appellee's business damages expert was an accountant who testified that the road project had caused a loss of profit to the station both during construction and after its completion. He calculated losses in the years 1992 through 1995 by comparing the sales volume of those years with the volume in 1991, the last year before the commencement of construction. After capitalizing the lost gasoline sales at 18%, the expert calculated that the total profits lost were $175,600, a figure that contained two elements, "losses sustained to date plus the value of future earnings lost."
*830 The expert testified that he had not analyzed the value of the business at the time of the sale and that such an evaluation would take four or five days. Although the lost profits would have been relevant to establish the value of the business on the date of sale, they are not the proper measure of damages in this case. See Nordyne, Inc. v. Florida Mobile Home Supply, Inc., 625 So.2d 1283, 1286-87 (Fla. 1st DCA 1993). The trial court's $100,000 damage figure was its own guesstimate, without foundation in the evidence.
Teca moved for involuntary dismissal at the close of the plaintiff's case and again after it had rested its case. See Fla.R.Civ.P. 1.420(b). One of the grounds raised was the inadequacy of the proof of damages. This was sufficient to preserve the issue for appellate review in this non-jury case. See Fla. R.Civ.P. 1.530(e).
Because there was no proof at trial under the correct measure of damages, we reverse the final judgment and remand for the entry of a judgment for the defendants. This result is required under Nico Indus., Inc. v. Steel Form Contractors, Inc., 625 So.2d 1252 (Fla. 4th DCA 1993). In that case, a subcontractor sued a general contractor and its bonding company for work performed on a construction site. The proper measure of damages for breach of a partially performed construction contract was "either quantum meruit or the contractor's lost profit together with the reasonable cost of labor and materials incurred in good faith in the course of partial performance of the contract." See id. at 1252 (citing Brooks v. Holsombach, 525 So.2d 910, 911 (Fla. 4th DCA 1988)). The subcontractor's damages testimony at trial was based on the percentage of work completed, an incorrect measure of damages. Id. at 1252. Finding no evidence addressing the proper measure of damages, this court reversed for the entry of judgment for the defendants.
Nico conflicts with Strickland v. Muir, 198 So.2d 49 (Fla. 4th DCA 1967). There, shareholders and noteholders of a defunct corporation sued individuals for fraud and deceit in inducing their investments. The trial court ruled for the plaintiffs on the fraud count. The proper measure of damages for fraud was either under the "benefit of the bargain" rule or the "out of pocket" rule; either theory would have required the plaintiffs to prove the actual value of the stocks and notes at the time of purchase. See id. at 51. The Strickland plaintiffs only "proved the amount they paid into the corporation and the amount received from the liquidation" of it. Id. Nonetheless, we remanded the case to the trial court for a new trial on damages only. See Id. at 52.
We believe that Nico offers the better approach. Strickland allows a second bite at the apple when there has been no proof at trial concerning the correct measure of damages.
As authority, Strickland relies on West Florida Land Co. v. Studebaker, 37 Fla. 28, 19 So. 176 (1896), a case where the plaintiff contended that he had been fraudulently induced to purchase land. The supreme court reversed a judgment for the plaintiff on several grounds, including the improper admission of a newspaper article at trial. After the plaintiff's verdict, the defendant moved for a new trial on the grounds that the verdict was "contrary to the weight of the evidence, and that the damages were not proven on the trial." Id. at 179. The supreme court observed that the evidence of damages at trial "was meager and uncertain." The court held that the "evidence was entirely too uncertain and indefinite to form the basis of an estimate by the jury of the damages suffered by the plaintiff," such that "[a] new trial should have been granted." Id.
The basis for distinguishing Studebaker from this case is a procedural one. In 1896, a new trial was the only remedy available to the Studebaker defendant. Post trial, neither the trial judge nor the supreme court could have entered judgment for the defendant. Before 1950, trial judges were "not authorized to entertain a post-verdict motion to set aside a verdict and enter judgment in accordance with a motion for directed verdict on the ground of the insufficiency of the evidence." 6551 Collins Ave. Corp. v. Millen, 104 So.2d 337, 339 (Fla.1958). The predecessor to Florida Rule of Civil Procedure *831 1.480 was enacted in 1950. Rule 1.480(b) permits a court to enter judgment in accordance with a motion for directed verdict. Because it arose under different procedural rules, Studebaker does not stand for the proposition that a new trial must be granted in 1998 where a directed verdict or dismissal would have been appropriate at trial.
We reverse the judgment in favor of appellee and remand to the trial court for the entry of judgment in favor of appellants. On the cross-appeal, we affirm the trial court's finding of no liability on the fraudulent misrepresentation count.
GUNTHER, WARNER, FARMER, KLEIN, STEVENSON, SHAHOOD and TAYLOR, JJ., concur.
KLEIN, J., concurs specially with opinion, in which FARMER, J., concurs.
STONE, C.J., dissents with opinion, in which DELL and HAZOURI, JJ., concur.
POLEN, J., dissents with opinion.
KLEIN, J., concurring specially.
I agree entirely with Judge Gross' opinion but am writing separately, as a member of the original panel, to address the footnote in Judge Polen's dissent and explain more fully how this case went from a per curiam affirmance to a reversal. In appellant's brief, which raised four issues, the second issue argued that an involuntary dismissal should have been granted. The main argument under that issue was that there was no evidence that the agreement was breached; however, at the end of the argument there was an additional argument, quoting U.S.B. Acquisition Co. v. Stamm, 660 So.2d 1075 (Fla. 4th DCA 1995), contending that there was no proof of the type of damage recoverable for this cause of action. We obviously overlooked that argument.
Appellant's motion for rehearing, which is less than two pages, was limited to the damage issue. It merely quoted the appropriate portion of U.S.B. and asserted that our affirmance in the present case was in conflict with U.S.B. because the results were different in "virtually identical cases." We agreed with the motion for rehearing that there was no proper proof of damages. We then discovered a conflict between two of our decisions, in regard to what should happen on remand, which is why we granted en banc review.
I believe there are two things which can be learned from this experience. First, although Florida Rule of Appellate Procedure 9.330 does not limit the length of motions for rehearing, long motions for rehearing are not nearly as effective as short ones. They should almost never exceed three or four pages. Second, although we see far too many motions for rehearing, Lawyers Title Insurance Corp. v. Reitzes, 631 So.2d 1100 (Fla. 4th DCA 1993), they can be appropriate, even in cases which are initially affirmed without opinion.
FARMER, J., concurs.
STONE, C.J., dissenting.
I would affirm notwithstanding the lack of evidence as to a loss in market value of the business.
I would not apply the strict approach of the majority, limiting Appellee's recovery to proof of the difference between the purchase price and a reduced market value of the business. Rather, I would apply the reasoning in Nordyne, Inc. v. Florida Mobile Home Supply, Inc., 625 So.2d 1283 (Fla. 1st DCA 1993), and recognize that the limited measure of damages that we follow may be inadequate to fairly compensate a party in unique circumstances for loss caused by a failure to disclose. To the extent that U.S.B. Acquisition Co. v. Stamm, 660 So.2d 1075 (Fla. 4th DCA 1995), precludes consideration of these damages, I would modify its holding accordingly.
We cannot be certain why Appellee did not present expert evidence of a reduction in fair market value. In some instances, reduction might not even be provable, as might be the case if Appellants gave Appellee a bargain price for the business in order to get rid of it before road construction commenced. Possibly, the business is even worth more as a result of the road improvements; however, such a windfall would be of little solace to a *832 buyer dependent on an income flow that is unexpectedly reduced. I also note that by the time this cause of action accrued, it was apparently too late to seek rescission.
The record does reveal, however, that the road construction did result in damages consisting of lost income and profits. We also know, by way of the trial court's finding, that Appellee would not have purchased the business had it known about the impending construction. To add insult to injury here, Appellants even filed their own claim for loss of business damages in the eminent domain action. Further, and in any event, the trial court recognized a direct relationship between the lost profits resulting from the road work and a loss in business value.
I would also not recede from, but would apply, Strickland v. Muir, 198 So.2d 49 (Fla. 4th DCA 1967), and afford Appellee a new trial on damages.
DELL and HAZOURI, JJ., concur.
POLEN, J., dissenting.
I have no disagreement with the en banc majority's determination to recede from Strickland v. Muir, 198 So.2d 49 (Fla. 4th DCA 1967) in favor of our more recent opinion in Nico Industries, Inc. v. Steel Form Contractors, Inc., 625 So.2d 1252 (Fla. 4th DCA 1993). I dissent because I believe it is improper to do so in this case. I believe a reversal is unwarranted because this case was not pled, proven, or decided on a fraudulent misrepresentation theory. Appellee's cause of action (and appellants' response thereto) was at all times presented as a breach of contract action. The trial court found appellants indefensibly breached the clause warranting no claims or threatened administrative action against the business; a finding the majority does not dispute. Yet the majority would leave appellee without any compensation for this apparent violation, because they convert appellee's breach of contract suit to a never-pled, never-defended, fraudulent misrepresentation case.[1]
Further, I disagree with the majority's characterization of the trial court's $100,000 damage award as a "guesstimate." Appellee's expert testified to net damages based on lost profits of $175,600. The trial court, like any fact-finder, was free to reject all or part of the expert's measure of damages. The $100,000 award arrived at by the trial court was within the range from $0 to $175,600, and thus I would affirm the award as being supported by the evidence.
NOTES
[1] It probably does not serve this dissent, but I will nonetheless note the extraordinary "reversal of fortune" occasioned by what was originally a 3-0 per curiam affirmance of appellee's judgment now becoming an 8-4 reversal on grounds the original panel felt warranted no discussion.