889 So.2d 87 (2004)
Alan A. KIND and Patricia A. Kind, his wife, Appellants,
v.
Dr. Alan GITTMAN, Appellee.
No. 4D03-1447.
District Court of Appeal of Florida, Fourth District.
November 10, 2004.
Rehearing Denied January 4, 2005.
*88 John J. Shahady and Thomas R. Shahady of Adorno & Yoss, P.A., Fort Lauderdale, for appellants.
Keith T. Grumer and Maidenly Sotuyo-Macaluso of Grumer & Levin, P.A., Fort Lauderdale, for appellee.
TAYLOR, J.
This appeal arises from the sale and purchase of a two-story office building in Pompano Beach, Florida. The sellers, defendants below, appeal from a final judgment entered upon a jury verdict for the plaintiff/buyer on his claim of fraud in the inducement. We reverse, because the plaintiff failed to prove the proper measure of damages for fraud.
In December 1999, when Alan and Patricia Kind sought to refinance their property, Union Planters obtained a "limited appraisal" of the property to determine if they qualified for a loan. The appraisal report estimated the "as is" fair market value of the building at $1.5 million.
Although the report included information concerning the building's then current leases and rental income, it expressly stated that the appraised value was based only on the fee simple value of the property and not the leases.
Upon learning that the building was valued at $1.5 million, the Kinds decided to sell the building instead of refinancing it. Alan Kind made copies of the limited appraisal to hand out to prospective buyers to assist them in obtaining financing.
In mid-February 2000, Dr. Gittman and his business partner, Cindy Estes, while scouting a location for their new medical clinic, spotted the "for sale" sign outside the Kinds' building. Dr. Gittman and Estes met with Alan Kind and discussed, among other things, Dr. Gittman's need for a guaranteed rental income stream from the second floor office suites. Kind provided Dr. Gittman with a copy of the limited appraisal, which described a rent roll as of December 19, 1999. At that time, the second floor was fully leased.
Ultimately, the Kinds accepted an offer of $1.6 million from Dr. Gittman to purchase the building. On May 9, 2000, Dr. Gittman and the Kinds executed a contract for sale and purchase. The contract states in pertinent part:
Other agreements: no prior or present agreements or representations shall be binding upon Buyer and Seller unless included into this contract.
Leases: Seller shall, not less than fifteen (15) days before closing, furnish the Buyer copies of all written leases and estoppel letters from each tenant specifying the nature and duration of the tenants occupancy, rental rates, advanced rent and security deposits paid by the tenant. If Seller is unable to obtain estoppel letters from each Tenant, the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit and Buyer may thereafter contact Tenants to confirm such information. Seller shall, at closing, deliver and assign all original leases to Buyer.
*89 An addendum to the contract, added at Dr. Gittman's request, states in pertinent part:
The Sellers warrant that the entire second floor of the real property, which is the subject matter of this Contract, is fully leased and all leases have a least two (2) years remaining and are transferable to the Buyers.
Pursuant to the contract, and prior to closing, Kind delivered to Dr. Gittman's attorney four subordination and estoppel letters from the second-floor tenants. He also delivered an affidavit to Dr. Gittman's attorney stating that five of the six office suites were fully leased and providing the names of the tenants. At that time, three of the tenants whose leases were described in the 1999 Limited Appraisal had already vacated the premises. After the contract was signed, Kind advised Dr. Gittman that one of the tenants would not be renewing its lease. However, Kind agreed to sign a supplemental addendum warranting that, if the tenant did not renew its lease, the Kinds would be leasing that suite.
Dr. Gittman received $1.2 million from Metro Bank to purchase the property, and the Kinds agreed to finance the $400,000 remainder and give Dr. Gittman a second mortgage. On the eve of closing, Dr. Gittman borrowed an additional sum from the sellers to pay for closing costs. On August 30, 2000 Dr. Gittman closed on the purchase of the building and executed a note and purchase money mortgage in favor of the Kinds.
After Dr. Gittman (hereinafter referred to as "the buyer") purchased the property, he made payments on the $400,000 note and the second promissory note and collected rents as expected from the second floor leases. However, five months after the closing, a major tenant that occupied four of the suites vacated the building and the buyer was left with just one tenant. The buyer ceased making mortgage payments to the Kinds (hereinafter referred to as "the sellers") and commenced this lawsuit against them.
The complaint alleged fraud in the inducement. More specifically, it alleged that the sellers misrepresented the length and rental income of the leases described in the limited appraisal presented to the buyer prior to closing. As a result, the buyer alleged, he paid an inflated value for the property. The complaint stated, in pertinent part:
10. As an inducement to purchase said property, Defendants represented to Plaintiff that the Property generated certain rental income and there existed certain long term leases as represented in the Limited Appraisal prepared for Union Planters Bank.
14. Plaintiff significantly overpaid for the Property due to the false representations of its value by defendants. Plaintiff did not receive the benefit of his bargain as a result of Defendant's fraudulent misrepresentations.
19. Plaintiff has been damaged by Defendant's fraudulent misrepresentation by not receiving the benefit of his bargain and paying an inflated price for the Property.
The buyer's complaint did not contain a breach of contract or warranty count and did not plead special damages, such as lost profits or lost rental income.
The sellers denied the fraud allegations and counterclaimed against the buyer for foreclosure on the $400,000 note and mortgage and for nonpayment of the money he borrowed for closing costs.
The case proceeded to trial, with the jury hearing the buyer's claim for fraud in the inducement and the court trying the sellers' mortgage foreclosure action and suit on both notes.
*90 At trial, the buyer extended his theory of fraud to include misrepresentations concerning the two-year leases in the contractual warranty and affidavit. Over the sellers' objection, he introduced evidence of the warranty and affidavit and testified concerning them. The buyer also presented evidence of lost profits (rents) over objection. He did not have a witness testify as to the actual value of the building absent the allegedly fraudulent leases.
After presenting his evidence, the buyer moved to amend his pleadings to conform to the evidence to allow a breach of contract count. The sellers objected. They argued that they would be prejudiced by insertion of this new claim mid-trial because of their inability to undergo discovery as to contractual damages and mitigation efforts. The trial court agreed and denied the motion to amend.
The sellers moved for directed verdict based on several grounds; however, the trial court reserved ruling until after the jury returned a verdict. The jury found the sellers liable for fraud in the inducement and awarded damages in the amount of $175,000 based solely on the evidence of "lost rental income." The trial court entered a final judgment in the buyer's favor for $175,000. On the seller's mortgage foreclosure action, the court found for the buyer on his affirmative defense and entered a setoff in the buyer's favor, partially canceling the original promissory note and mortgage to the extent of the jury's $175,000 award.
The sellers moved for a directed verdict on numerous grounds at the close of the buyer's case and after the jury's verdict. However, we address just one ground, because it is dispositive: the buyer's failure to prove damages for fraud. We agree with the sellers that the trial court erred by not entering a directed verdict on this issue.
In our district, there are two standards for measuring damages in an action for fraud, and either may be used depending upon the circumstances. See Martin v. Brown, 566 So.2d 890 (Fla. 4th DCA 1990). According to Martin:
The first standard is the "benefit of the bargain" rule which awards as damages the difference between the actual value of the property and its value had the alleged facts regarding it been true. The second standard is the "out-of-pocket" rule which awards as damages the difference between the purchase price and the real or actual value of the property.
Id. at 891-892.
Either measure of damages requires a plaintiff to prove the actual value of the property at the time of purchase. See Teca, Inc. v. WM-TAB, Inc., 726 So.2d 828, 830 (Fla. 4th DCA 1999). Lost profits or lost rents are not the proper measure of damages in a fraudulent misrepresentation case. Id.
In this case, the buyer did not prove the element of damages. Although he alleged in his complaint that he did not receive the benefit of his bargain because he paid an "inflated price" for the property, at trial he presented no testimony fixing the actual value of the property on the date of the sale. The only evidence of damages he presented was a description of lost rental profits. Lost rental profits were not a proper measure of damages in this fraud case. Because there was no proof at trial of the correct measure of damages, judgment should have been entered for the sellers. See Teca, Inc., 726 So.2d at 830.
On cross-appeal, the buyer argues that the trial court abused its discretion in denying his rule 1.190(b) motion to amend the pleadings to conform to the evidence. *91 We disagree and affirm the court's ruling. Allowing the mid-trial amendment to introduce a new and different cause of action for breach of contract would have prejudiced the sellers, as the new issues and grounds of relief would have required additional discovery and possibly additional witnesses. See Allett v. Hill, 422 So.2d 1047 (Fla. 4th DCA 1982) (finding that trial court erred in permitting plaintiffs in slip-and-fall negligence case to amend their complaint on the eve of trial to assert a breach-of-contract theory).
We reverse and remand this case with directions to enter judgment in favor of the defendants/sellers on the fraud claim. We further reverse the order granting the plaintiff/buyer an offset against the amount due on the mortgage and note and remand for further proceedings consistent with this opinion.
GROSS and HAZOURI, JJ., concur.