[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17734
_____

D.C. Docket No. 3:13-cv-00132-TJC-PDB

HOLLISTER INCORPORATED,
an Illinois corporation,

                                        Plaintiff - Appellant,

versus

ZASSI HOLDINGS, INC.,
a Florida corporation,
f.k.a. Zassi Medical Evolutions, Inc.,
PETER VON DYCK,
an individual,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 25, 2018)

Before JILL PRYOR, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

Plaintiff Hollister, Inc. purchased assets from defendant Zassi Holdings, LLC related to Zassi's bowel management system product, including its interests in two pending patent applications. In the transaction, Zassi and its founder, defendant Peter von Dyck, represented to Hollister that it was transferring the rights to the intellectual property free and clear of any licenses. Several years later, after the patents issued and Hollister brought an infringement action against a competitor, Hollister learned that in fact Zassi had given the competitor a license to use the intellectual property. Hollister sued Zassi and von Dyck for fraud and breach of contract based on their failure to disclose the license.

In a bifurcated proceeding, a jury found Zassi and von Dyck liable for fraud and breach of contract. At the bench trial to determine Hollister's damages, the district court, without any objection from the parties, calculated the damages as of the date when Hollister learned of the fraud. But Florida law required that the damages be calculated as of the date of the breach, meaning the damages should have been calculated as of a date four years earlier, when the asset purchase transaction closed. The district court made an additional error when, in calculating damages as of the later date, the court erroneously concluded that Hollister had

2

failed to prove any damages and awarded it nothing. Given these two layers of error, we must reverse and remand the case for a new trial.

## I.    FACTUAL BACKGROUND[1]

### A.    Hollister Purchases Zassi's Assets Related to Its Bowel Management System

This case arises out of a September 2006 business transaction in which Hollister purchased substantially all of Zassi's assets related to a bowel management system that Zassi had developed for incontinent patients. Hollister paid approximately $35 million to acquire Zassi's assets, which included an interest in two pending patent applications. Hollister intended to acquire the assets so that it could develop and sell its own bowel management system product incorporating Zassi's technology. Hollister predicted that within seven years its new product would become the dominant player in the bowel management system market. Hollister's projection depended on the patent applications being granted so that it could have a monopoly on the bowel management technology and exclude competitors, including a company called ConvaTec, Inc., from developing competing bowel management systems that incorporated the technology Hollister would acquire from Zassi.

---

[1] Because we write for the parties, we set out only what is necessary to explain our decision.

3

Unbeknownst to Hollister, however, before the asset sale Zassi had granted ConvaTec a license to use Zassi's intellectual property, which allowed ConvaTec to develop a competing bowel management system that incorporated Zassi's technology. Beginning in 1999, Zassi and ConvaTec had partnered to develop several products; they shared information and related technology. Disputes eventually arose between Zassi and ConvaTec regarding the use of intellectual property related to the bowel management system and other products. In October 2005, Zassi and ConvaTec resolved their disputes by entering into a settlement agreement in which ConvaTec paid Zassi $5.9 million dollars. As part of the settlement agreement, Zassi and ConvaTec agreed to a mutual release of present and future claims related to several products, including the bowel management system. Zassi expressly released ConvaTec from future claims for patent infringement related to ConvaTec's bowel management system, which incorporated Zassi's technology. This provision, in effect, gave ConvaTec a license to infringe if Zassi later received a patent for its bowel management system.

At the time of Hollister's purchase of Zassi's assets, Hollister was unaware of ConvaTec's license. Neither Zassi nor von Dyck ever disclosed the existence of the license—even though Hollister asked, during the due diligence period, for copies of all of Zassi's licenses to and from third parties. Zassi also falsely

represented in the asset purchase agreement that it was transferring its intellectual property free and clear of any license or other restriction.  If Hollister had known about the settlement agreement and release between ConvaTec and Zassi, it would not have agreed to the terms of the asset purchase agreement.

**B.    Hollister Successfully Patents the Technology Related to the Bowel Management System**

After purchasing Zassi's assets in September 2006, Hollister began to sell its own bowel management system product.  Shortly after the purchase was completed, the first patent application was granted, and Hollister was issued U.S. Patent No. 7,147,627 (the '627 patent).  Hollister continued to prosecute the second patent application and amended the claims in it.  In May 2010, approximately four years after the transaction with Zassi, the second application was granted, and Hollister was issued U.S. Patent No. 7,722,583 (the '583 patent).

Although Hollister had succeeded in patenting the bowel management system technology, it failed to become the dominant player in the market, with sales falling far short of its predictions.  ConvaTec, instead, captured the majority market share with its competing bowel management product.  Once the '583 patent issued, Hollister sought to enforce its intellectual property rights under the patent. It sued ConvaTec and C.R. Bard, Inc. which manufactured another competing bowel management system, for infringing the '583 patent.  Bard quickly settled

5

with Hollister, agreeing to pay $6.65 million.  As part of the settlement, Bard received a worldwide license for Hollister's patents.

Hollister's litigation against ConvaTec did not succeed.  In response to Hollister's claims, ConvaTec countered that it was not liable for infringement because it had a license.  Only at this point did Hollister learn about ConvaTec's license.  In the infringement lawsuit, ConvaTec moved for summary judgment based on the license.  The district court granted summary judgment to ConvaTec. *See Hollister Inc. v. ConvaTec, Inc.*, No. 10-C-6431, 2011 WL 2473662 (N.D. Ill. June 21, 2011).

## C.    Hollister Sues Zassi and Von Dyck for Fraud and Breach of Contract

After losing the ConvaTec litigation, Hollister filed this action in federal court against Zassi and von Dyck based on their failure to disclose ConvaTec's license.  Hollister brought claims under Florida law for breach of contract and fraud.  It alleged that the breach of contract and fraud occurred in 2006 when Zassi and von Dyck failed to disclose ConvaTec's license before selling Hollister the assets related to Zassi's bowel management system.  In the complaint, Hollister sought as damages "the amount it would have recovered in its lawsuit against ConvaTec if not for Zassi's release."  Doc. 1 at 2.[2]  In a bifurcated proceeding, a jury found Zassi and von Dyck liable for fraud and breach of contract.

---

[2] All citations in the form "Doc. #" refer to the district court docket entries.

When the case moved to the damages phase, the parties consented to a bench trial. At the bench trial, Hollister continued to assert that its damages for Zassi and von Dyck's breach of contract and fraud were equivalent to the amount Hollister would have recovered in an infringement lawsuit brought against ConvaTec—after the '583 patent issued in 2010—if ConvaTec had received no license from Zassi.[3] Hollister claimed that under patent law principles its damages in a hypothetical infringement action against ConvaTec would have been equal to the amount that ConvaTec would have paid as a reasonable royalty in a hypothetical negotiation at the time the infringement began in 2010. Hollister contended that this reasonable royalty could be calculated using its $6.65 million settlement with Bard as a benchmark. Hollister reasoned that because ConvaTec's market share was 3.89 times greater than Bard's, in a hypothetical negotiation ConvaTec would have paid 3.89 times more for a license than Bard did; Hollister thus calculated the value of a reasonable royalty at $25,868,500.

The only remaining defendant, Von Dyck,[4] agreed that this framework— looking to the amount that Hollister would have recovered from ConvaTec in a hypothetical infringement action brought after the '583 patent was issued—was the

---

[3] Of course, Hollister recovered nothing from ConvaTec because of ConvaTec's license from Zassi. We thus refer to this imagined lawsuit in which ConvaTec had no license as the "hypothetical infringement action."

[4] After the liability phase, Zassi's counsel withdrew from the case. Because Zassi failed to retain new counsel, the district court adjudged Zassi in default.

appropriate way to calculate Hollister's damages.  But he argued that Hollister nonetheless was entitled to nothing because (1) ConvaTec's bowel management system did not infringe the claims in the '583 patent and so Hollister would not have prevailed in the hypothetical infringement action, and (2) even if ConvaTec had infringed the '583 patent, at the damages trial Hollister failed to offer sufficient evidence of the value of a reasonable royalty and what it would have recovered as damages from ConvaTec in the hypothetical infringement action.

After the bench trial, the district court issued written findings of fact and conclusions of law.  The court accepted, as the parties had, that Hollister's damages were equivalent to the amount that Hollister would have recovered from ConvaTec in the hypothetical infringement action.  According to the district court, Hollister had proven ConvaTec's infringement of the '583 patent.

The district court then considered the damages that Hollister would have been awarded against ConvaTec in the hypothetical infringement action, which under patent law principles would be measured by the amount that ConvaTec would have paid for a reasonable royalty.  The district court rejected Hollister's damages model that used the Bard settlement as a yardstick to assess what ConvaTec would have agreed to pay as a royalty in a hypothetical negotiation. The court explained that Hollister introduced no evidence about how the Bard settlement amount was reached.  Indeed, Hollister's witness who testified about the

8

Bard litigation admitted that he had no idea how the parties had arrived at the settlement amount. In the absence of any evidence about the negotiations with Bard addressing the "considerations that went into the final settlement number," the district court decided that it would be speculative to use the Bard settlement as a yardstick to measure what ConvaTec would have paid for a reasonable royalty for use of the '583 patent. Doc. 197 at 34. Because Hollister had failed to offer a viable model for calculating the value of a reasonable royalty—that is, what it would have been awarded in the hypothetical infringement action—the district court awarded Hollister no damages on its breach of contract and fraud claims.

After the district court entered judgment awarding no damages,[5] Hollister filed a post-trial motion asking the court to reconsider. In the motion, Hollister continued to argue that the amount ConvaTec would have paid for a reasonable royalty was the proper measure of damages. But now it also contended that the court could look to the amount that ConvaTec paid Zassi in their 2005 settlement agreement, $5.9 million, and award Hollister that amount in damages.

The district court denied the motion for reconsideration and rejected Hollister's new damages calculation as well. The court explained that damages in the hypothetical infringement action could not be based on what ConvaTec had

---

[5] Based on Hollister's failure to prove damages, the district court entered judgment in favor of both Zassi and von Dyck, even though Zassi had not appeared at the bench trial on damages.

paid Zassi for a license in 2005 because that settlement was reached five years before the '583 patent issued and ConvaTec began infringing.  The district court also refused to use this settlement as a benchmark because some of what ConvaTec paid may have been intended to resolve claims related to other Zassi products. Without evidence about how much of the $5.9 million settlement was attributable to ConvaTec's license for the bowel management system, the district court found that it was "unclear whether the value of the release" allowing ConvaTec to use Hollister's bowel management system technology "was $5.9 million or some lower amount, with the balance attributable to a release from claims" related to other technology.  Doc. 205 at 8.

Hollister appealed the district court's judgment awarding no damages and denial of the motion for reconsideration.

## II.    STANDARD OF REVIEW

Following a bench trial, we review a district court's legal conclusions *de novo* and its findings of fact for clear error.  *Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1245 (11th Cir. 2015).

## III.    LEGAL ANALYSIS

This case requires us to review the district court's determination, as trier of fact, that Hollister was entitled to no damages on its Florida law claims for breach

of contract and fraud.[6]  We conclude that the district court made two errors in awarding no damages in this case.  First, the district court erred when it accepted the parties' position that Hollister's damages for its fraud and breach of contract claims could be measured as of 2010—when the '583 patent issued and Hollister sued ConvaTec—rather than as of 2006—when Zassi and von Dyck committed the fraud and breached the contract.  But even if the district court appropriately measured Hollister's damages as of 2010, the court committed a second, separate error when, in calculating Hollister's damages as of 2010, it concluded that Hollister had failed to prove the value of a reasonable royalty in the hypothetical infringement action and thus awarded Hollister no damages.  Hollister introduced evidence proving that a reasonable royalty would have had value in 2010, so the district court, in applying a framework that awarded damages as of 2010, was required to award at least nominal damages.

We note that Hollister has raised only the second issue on appeal.  Our review generally would be limited to that issue, and we would not consider the separate issue of whether the district court erred in using a damages model that assessed Hollister's damages as of 2010, when the infringement action was brought, rather than 2006, when the fraud occurred.  Previously, though, we have recognized that in the unique circumstance when two separate errors occurred in

_____

[6] It is undisputed that Florida law applies in this diversity action.

11

awarding damages, we can review both errors even if the appellant only raised one of them below and on appeal. *See Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1271 (11th Cir. 2008) (explaining that the combined effect of two errors in calculating damages "took the error to a different level, one beyond the level of error insulated by the contemporaneous objection rule").

## A.    The District Court Erred As a Matter of Law in Measuring Hollister's Damages for the Fraud Claim as of the Date of ConvaTec's Infringement Rather than Zassi and von Dyck's Fraud.

Under Florida law, a person who is defrauded "is entitled to the measure of damages that will fully compensate him." *Morgan Stanley & Co. v. Coleman (Parent) Holdings, Inc.*, 955 So. 2d 1124, 1128 (Fla. Dist. Ct. App. 2007). The award of damages on a fraud claim is meant "to restore the injured party to the position it would have been had the wrong not been committed." *Nordyne, Inc. v. Fla. Mobile Home Supply, Inc.*, 625 So. 2d 1283, 1286 (Fla. Dist. Ct. App. 1993).[7]

In fraud actions, Florida law follows the "flexibility theory," which permits a plaintiff to recover damages under either a benefit of the bargain or an out-of-pocket theory, depending on whichever will more fully compensate him. *Id.* Under a benefit of the bargain theory, damages are measured as "the difference

---

[7] For purposes of this appeal, we accept, as the parties have, that the same legal framework governs damages for Hollister's breach of contract claim. For the breach of contract claim, Hollister was "entitled to recover monetary damages that will put it in the same position it would have been had the other party not breached the contract." *Capitol Envtl. Servs., Inc. v. Earth Tech, Inc.*, 25 So. 3d 593, 596 (Fla. Dist. Ct. App. 2009).

between the actual value of the property and its value had the alleged facts regarding it been true." *Kind v. Gittman*, 889 So. 2d 87, 90 (Fla. Dist. Ct. App. 2004) (internal quotation marks omitted). Under an out-of-pocket theory, damages are measured as "the difference between the purchase price and the real or actual value of the property." *Id.* (internal quotation marks omitted). Florida law is clear that "[e]ither measure of damages requires a plaintiff to prove the actual value of the property *at the time of purchase*." *Id.* (emphasis added). Put differently, "the crucial time for the measurement is the time of the fraudulent representation." *Totale, Inc. v. Smith*, 877 So. 2d 813, 815 (Fla. Dist. Ct. App. 2004).

The parties and the district court made a fundamental legal error in this case when they agreed that Hollister's benefit of the bargain damages should be measured as of 2010 when Hollister brought its unsuccessful infringement action against ConvaTec, rather than as of 2006 when Zassi and von Dyck committed the fraud and breached the contract. To illustrate the error, we must begin by explaining how the district court calculated Hollister's damages.

In the bench trial, Hollister relied on a benefit of the bargain theory to prove its damages. Hollister asserted that if the facts as represented by Zassi and von Dyck about the non-existence of a license to ConvaTec had been true, it would have had the right to enforce the patent against ConvaTec in an infringement

13

action.  Hollister treated the damages that it would have collected from ConvaTec in such a hypothetical infringement action as its measure of damages in this case.[8]

Hollister's damages in the hypothetical infringement action would have been governed by patent law.  Under the Patent Act, Hollister would have been entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty."  35 U.S.C. § 284.  Patent law provides that a reasonable royalty may be calculated as "the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before the infringement began."  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).  The damages in Hollister's hypothetical infringement action thus would have been the amount that ConvaTec would have paid Hollister for a license in a hypothetical negotiation occurring in 2010 after the '583 patent issued.[9]  By assuming that this hypothetical reasonable royalty would represent Hollister's benefit of the bargain damages, the district court and the parties accepted that it represented the difference between the actual value of the property Hollister received in its transaction with Zassi and the value of the property had the

---

[8] Von Dyck repeatedly confirmed to the district court its agreement that Hollister was entitled to the damages it would have obtained from ConvaTec if it had prevailed in the infringement action.

[9] Von Dyck agreed that "[t]he hypothetical reasonable royalty negotiation should be determined as of the date the alleged infringement began, which in this matter is May 25, 2010, the date the '583 Patent issued and ConvaTec's . . . products alleged infringement of the '583 Patent began."  Doc. 189 at 26.

14

representation that the intellectual property was not subject to any undisclosed licenses been true.

The problem with this method of calculating damages is that under Florida law Hollister was required to prove its damages *as of the time of the fraud*—that is, in 2006 when the Zassi asset purchase closed. *See Kind*, 889 So. 2d at 90; *see also Totale*, 877 So. 2d at 815 (explaining that "the crucial time for the measurement [of damages] is the time of the fraudulent representation"). Yet the district court, in effect, calculated Hollister's damages as of 2010—after the patents had issued and Hollister sued ConvaTec. This was error; it is too speculative to treat the amount that ConvaTec would have paid as a royalty for a license in 2010 as establishing the value of a license four years earlier. This is particularly true because in 2006 a license would have been less valuable due to the fact that no patent had yet been granted for the technology. *See Totale*, 877 So. 2d at 815 (recognizing that when the value of property that is the subject of the false representation increases after the misrepresentation occurs, the plaintiff's damages should not include this later appreciation). We conclude that the district court made a legal error when it applied a model that measured Hollister's damages as of 2010 rather than as of the time of the fraudulent transaction in 2006.

15

**B.    The District Court Erred in Concluding that Hollister Failed to Prove It Was Entitled to Any Damages.**

The district court's zero damages award is flawed for a second reason. Even if we assume, as the parties have, that it was correct for the district court to use a damages model that looked to the amount that Hollister would have recovered in the hypothetical infringement action in 2010 to calculate its benefit of the bargain damages for the fraud that occurred in 2006, the district court erred in concluding that Hollister failed to prove it would have recovered any damages in the hypothetical infringement action. We disagree with the district court because Hollister's evidence—although imperfect—established that a reasonable royalty in 2010 had value and thus Hollister would have recovered *some* damages in the hypothetical infringement action.

As we explained above, Hollister was entitled to damages at least equal to the value of a reasonable royalty. The Federal Circuit has explained that in a patent infringement action "a fact finder may award no damages only when the record supports a zero royalty award." *Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (en banc). "If a patentee's evidence fails to support its specific royalty estimate, the fact finder is still required to determine what royalty is supported by the record." *Id.* at 1327. A court must award some damages unless the case is "completely lacking any evidence on

16

which to base a damages award" because "it seems unlikely that a willing licensor and willing licensee would agree to a zero royalty payment . . . where both infringement and validity are assumed." *Id.* at 1328.  Even when the patentee's proof of damages is extremely weak, the proper course is for the court to award nominal damages, not zero damages.  *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015) ("[A] patentee's failure to show that its royalty estimate is correct is insufficient grounds for awarding a royalty of zero.").

Here, assuming that it was appropriate for the district court to look to the reasonable royalty that Hollister would have recovered in a hypothetical infringement action brought in 2010, the district court erred when it concluded that Hollister had failed to prove it had any damages as of 2010.  Hollister introduced proof that the license ConvaTec negotiated in 2010 had value.  Because there was no evidence about how the Bard settlement amount was reached, the $6.65 million Bard paid to settle Hollister's infringement action and receive a worldwide license to use Hollister's patented technology might have included other considerations, and thus the value of the royalty for the bowel management system technology was less than $6.65 million.  Nevertheless, that does not mean that Hollister failed to prove that the royalty had some value.  Even if Hollister's proof of a reasonable royalty wasn't very exact or there were ways that the proof could be challenged, it seems to us that Hollister was still entitled to something more than a royalty of

17

zero.  *See id.* at 1372.  Because the record is not "completely lacking any evidence" that the ConvaTec license had value, principles of patent law dictate that the district court was required to award at least nominal damages.  *Apple*, 757 F.3d at 1328.

We acknowledge that on appeal Hollister has challenged only the district court's conclusion that Hollister failed to offer any evidence of the value of a reasonable royalty in the hypothetical infringement action; it did not argue that the district court erred in measuring its damages for fraud that occurred in 2006 by looking to the damages that Hollister would have recovered in a hypothetical infringement action brought in 2010.  But, as we recognized in *Rodriguez*, it is appropriate to address both of these errors so that the district court, upon remand, can award damages using a model that—consistently with Florida law—calculates Hollister's damages as of the time when the fraud occurred.  *See* 518 F.3d at 1271.

In *Rodriguez*, a group of grocery store employees sued their employer seeking back pay for unpaid overtime.  *Id.* at 1261-62.  At trial, the district court erroneously instructed the jury on how to calculate the employees' hourly rate for purposes of determining the amount of back pay owed.  *Id.* at 1265.  Neither the employees nor the grocery store objected to the erroneous instruction.  *Id.*  When the jury returned a verdict that awarded the employees more than the maximum amount allowed by the district court's jury instruction, the grocery store appealed

18

the verdict but accepted that the district court's instruction was correct. *Id.* at 1265-66.

Despite the fact that the grocery store challenged in the district court and on appeal only the jury's calculation of damages, not the district court's erroneous instruction, we ordered a new trial so that on remand the jury could calculate damages under the correct damages framework. *Id.* at 1271-72. We recognized on appeal that there were two distinct errors: the district court had erroneously instructed the jury on the damages framework, and the jury had incorrectly calculated damages under the district court's erroneous instruction. *Id.* at 1270. If the district court had merely instructed the jury about the wrong standard for calculating damages, we would have affirmed because the parties failed to object to the error below. *Id.* at 1268. But the jury's erroneous calculation "took the error to a different level, one beyond the level of error insulated by the contemporaneous objection rule." *Id.* at 1271. We thus looked past the fact that the parties had accepted the damages model in the district court and on appeal to correct the error in the jury instructions instead of limiting our review only to the issue raised by the grocery store. *Id.* In light of *Rodriguez*, here we instruct the district court on

19

remand to award damages to Hollister based on the loss that it experienced in 2006, at the time of the fraud.[10]

We need not decide the precise model that Hollister must use upon remand to prove its damages as of 2006. Because the fraud related only to the existence of ConvaTec's license, we accept that evidence about the value of ConvaTec's license in 2006 would represent Hollister's benefit of the bargain damages, as it would establish the difference between the actual value of the property that

---

[10] Von Dyck argues that no remand is necessary because we may affirm the district court's entry of judgment in his favor for two alternative reasons. We may, of course, affirm the district court's judgment for any reason supported by the record, even if not relied upon by the district court. *See Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1294 (11th Cir. 2007). But we are not persuaded that the record supports either of von Dyck's alternative arguments.

First, von Dyck argues that the district court's judgment in his favor is supported by the record, which shows that he was entitled to judgment as a matter of law regarding liability on the fraud claim because Hollister could not have justifiably relied on any misrepresentation in the asset purchase agreement when the agreement included a no reliance clause and a merger clause. We conclude, as the district court did, that von Dyck failed to adequately preserve this argument when he raised it for the first time in a renewed motion for judgment as a matter of law filed under Federal Rule of Civil Procedure 50(b). Because von Dyck failed to raise this argument in a motion for judgment as a matter of law under Rule 50(a) before the case was submitted to the jury, the district court properly denied his Rule 50(b) motion. *See Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 904 (11th Cir. 2004) (explaining that a district court "lack[s] authority to grant a Rule 50(b) judgment on a ground not raised by the parties prior to the submission of the case to the jury"). Accordingly, we reject von Dyck's argument that he was entitled to judgment as a matter of law on the fraud claim.

Second, von Dyck argues that the district court clearly erred in finding that ConvaTec's rectal catheter product infringed the claims in Hollister's '583 patent. *See Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 835 (2015) (adopting clearly erroneous standard to review finding of infringement). On appeal, von Dyck does not challenge the district court's construction of the claims in the patent, which it found described a product with at least two sections. Instead, von Dyck argues that there was no evidence to support the district court's factual finding that ConvaTec's product, which was made of a uniform piece of material, had two distinct sections. The record supports this finding, however: a witness testified that ConvaTec's product had two distinct sections when in use.

Hollister received (which was subject to ConvaTec's license) and its value had the alleged facts about the property it been true (in which case ConvaTec would have had no license). In establishing the value of the license at the time of the transaction in 2006, Hollister could indeed borrow patent law's reasonable royalty model.

There may be several ways for Hollister to establish the value of a reasonable royalty at the time of the fraud. Hollister potentially could use the $5.9 million that ConvaTec paid Zassi for the release in their 2005 settlement agreement. After all, ConvaTec acquired the license in the settlement agreement only about a year before the fraudulent transaction. In the settlement agreement, though, Zassi also released ConvaTec from claims related to ConvaTec's use of Zassi's technology for other products. To use this agreement as a yardstick, Hollister probably would need to introduce some evidence showing what portion of the settlement payment represented the amount that ConvaTec paid to acquire the license for the bowel management system technology as opposed to the other technology. As an alternative, Hollister potentially could rely on a report from its investment banker written at the time of the transaction that valued the intellectual property Hollister acquired from Zassi at $8.7 million. To prove its damages in this way, Hollister would need additional evidence showing how much the value of the intellectual property portfolio declined due to ConvaTec's license. We express

21

no preference and also leave open the possibility that Hollister may rely on some other methodology to measure its damages as of the time of the fraud in 2006, so long as the method is consistent with Florida law.

## IV.  CONCLUSION

For the reasons set forth above, we reverse the district court's judgment awarding no damages to Hollister.  The case is remanded for a new trial on damages consistent with this opinion.

**REVERSED AND REMANDED.**